Matthew G. Berkowitz (Bar No. 310426)
SHEARMAN & STERLING LLP
1460 El Camino Real
2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Fax: 650.838.3699
Email: matthew.berkowitz@shearman.com

John F. Cove Jr. (Bar No. 212213)
SHEARMAN & STERLING LLP
535 Mission Street
25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
Fax: 415.616.1339
Email: john.cove@shearman.com

Mark A. Hannemann (*pro hac vice* to be filed)
Thomas R. Makin (*pro hac vice* to be filed)
Patrick R. Colsher (*pro hac vice* to be filed)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212.848.4000
Fax: 646.848.7708
Email: mark.hannemann@shearman.com
        thomas.makin@shearman.com
        patrick.colsher@shearman.com

*Attorneys for Defendant Price f(x), Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| VENDAVO, INC., | Case No. 17-cv-06930-RS |
| Plaintiff, | **PRICE F(X), INC.'S MOTION TO DISMISS VENDAVO'S COMPLAINT PURSUANT TO RULE 12(B)(6)** |
| v. | |
| PRICE F(X) AG, et al., | Date:       March 8, 2018 |
| Defendants. | Time:       1:30 pm |
| | Ctrm:       No. 3 – 17th Floor |
| | Judge:      Hon. Richard Seeborg |
| | Trial Date: TBD |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ....................................................... 2

III.    RELEVANT FACTUAL BACKGROUND ............................................................ 2

     A.     Vendavo's Complaint ................................................................................ 2

     B.     The Asserted Vendavo Patents ................................................................ 3

IV.    APPLICABLE LEGAL STANDARDS .................................................................. 9

V.     ARGUMENT ......................................................................................................... 10

     A.     Vendavo's Complaint Fails to State a Claim for Relief ........................ 10

          1.     The First Cause Fails to Plausibly Allege Trade Secret Misappropriation ... 10

              a.   Vendavo does not identify with sufficient particularity any trade secret ................................................................................. 10

              b.   Vendavo fails to plausibly allege misappropriation by Price f(x) ........... 11

          2.     The Second through Sixth Causes Fail to Plausibly Allege Patent Infringement ................................................................................ 14

              a.   Vendavo's parroting of the patent claim language is insufficient to state a claim for direct infringement ................................................. 14

              b.   Vendavo's enhanced damages and willful infringement allegations fail to plausibly allege pre-suit knowledge or egregious conduct ...................... 15

          3.     The Seventh Cause Fails to Plausibly Allege Copying of a Copyrighted Work ....................................................................... 16

          4.     The Eighth Cause Fails to Plausibly Allege Unfair Competition .................. 17

     B.     The Vendavo Patents are Ineligible Under 35 U.S.C. § 101 ....................................... 18

          1.     The Section 101 Issues are Ripe for Resolution at the Motion to Dismiss Stage ..................................................................................... 18

          2.     The Asserted Patent Claims are Ineligible ...................................... 19

VI.    CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ........................................................... 19

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ................................................ 20, 22, 23, 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................... 10, 15

*Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*, No. 16-cv-03737-JCS,
   2017 WL 412524 (N.D. Cal. Jan. 31, 2017) ........................................ 11, 13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................... 9, 10

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ........................................................... 24

*Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 15-cv-01370-EJD,
   2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ........................................ 11

*BrightEdge Techs. Inc. v. Searchmetrics, Inc.*, No. 14-cv-01009-HSG,
   2018 WL 489037 (N.D. Cal. Jan. 19, 2018) ........................................ 25

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-cv-02177-SI,
   2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ................................ 11, 12, 13

*Classen Immunotherapies, Inc. v. Shionogi, Inc.*,
   993 F. Supp. 2d 569 (D. Md. 2014) ........................................... 22

*The Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017) ........................................... 18

*Coffelt v. NVIDIA Corp.*, No. 16-cv-00457-SJO,
   2016 WL 7507763 (C.D. Cal. June 21, 2016) ................................ 19, 22, 25

*Coinstar, Inc. v. Coinbank Automated Sys., Inc.*,
   998 F. Supp. 1109 (N.D. Cal. 1998) ........................................... 22

*Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-cv-02106-RS,
   2016 WL 2961868 (N.D. Cal. May 23, 2016) ................................ 14, 15, 17

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014) ........................................... 18, 19

*Cornucopia Prods., LLC v. Dyson, Inc.*,
    881 F. Supp. 2d 1086 (D. Ariz. 2012).............................................................................22

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)......................................................................................24

*Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*,
    236 Cal.App.4th 243 (2015)...........................................................................................18

*Delphix Corp. v. Actifo Inc.*, No. 13-cv-04613-RS,
    2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ...............................................14, 15, 17

*Diamond v. Diehr*,
    450 U.S. 175 (1981)..................................................................................................19, 24

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)......................................................................................23

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991).........................................................................................................16

*Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF,
    2017 WL 2462423 (N.D. Cal. June 7, 2017)...........................................................15, 16

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)....................................................................................................19, 20

*In re Grams*,
    888 F.2d 835 (Fed. Cir. 1987)........................................................................................21

*GSI Tech., Inc. v. United Memories Inc.*, No. 13-cv-01081-PSG,
    2015 WL 5655092 (N.D. Cal. Sept. 25, 2015)..............................................................13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016).............................................................................................15, 16

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) ...................................................................12, 14

*Metcalf v. Bocho*,
    294 F.3d 1069 (9th Cir. 2002) ........................................................................................16

*Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795-EJD,
    2017 WL 2314407 (N.D. Cal. May 26, 2017)...............................................................15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir, 2015).................................................................................20, 24

*Papst Licensing GmbH v. Xilinx, Inc.*,
    193 F. Supp. 3d 1069 (N.D. Cal. 2016) .........................................................................23

*Parker v. Flook*,
　　437 U.S. 584 (1978) ...................................................................................................... 19

*Radware, Ltd. v. A10 Networks, Inc.*, No. 13-cv-02021-RMW,
　　2014 WL 61047 (N.D. Cal. Jan 7, 2014) ...................................................................... 22

*Rice v. Fox Broadcasting Co.*,
　　330 F.3d 1170 (9th Cir. 2003) ...................................................................................... 16

*In re Richman*,
　　563 F.2d 1026 (C.C.P.A. 1977) .................................................................................... 19

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. 09-cv-05659-WHA,
　　2011 WL 166198 (N.D. Cal. Jan. 18, 2011) ................................................................ 17

*Soverain Software LLC v. Newegg Inc.*,
　　728 F.3d 1332 (Fed. Cir. 2013) .................................................................................... 19

*Space Data Corp. v. X*, No. 16-cv-03260-BLF,
　　2017 WL 3007078 (N.D. Cal. July 14, 2017) .................................................. 11, 12, 13

*Space Data Corp. v. X*, No. 16-cv-03260-BLF,
　　2017 WL 5013363 (N.D. Cal Feb. 16, 2017) .......................................................... 10, 11

*Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-02965-SC,
　　2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .......................................................... 11, 17

*Synopsys, Inc. v. Mentor Graphics Corp.*,
　　839 F.3d 1138 (Fed. Cir. 2016) .................................................................................... 24

*United States v. Ritchie*,
　　342 F.3d 903 (9th Cir. 2003) ........................................................................................ 19

*Veronica Foods Co. v. Ecklin*, No. 16-cv-07223-JCS,
　　2017 WL 2806706 (N.D. Cal. June 29, 2017) ......................................................... 10, 11

*Versata Dev. Grp v. SAP Am. Inc.*,
　　793 F.3d 1306 (Fed. Cir. 2015) ........................................................................ 20, 21, 24

*Walker v. Dreyer's Grand Ice Cream, Inc.*, No. 06-cv-4354-PJH,
　　2006 WL 2642535 (N.D. Cal. Sept. 14, 2006) ............................................................ 18

*Williamson v. Citrix Online, LLC*,
　　212 F. Supp. 3d 887 (C.D. Cal. 2016) .......................................................................... 19

*XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-cv-03848-RS,
　　2017 WL 4551519 (N.D. Cal. Oct. 11, 2017) .............................................................. 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

18 U.S.C. § 1832 .......................................................................................................... 10

18 U.S.C. § 1837 ..................................................................................................... 10, 12

18 U.S.C. § 1839 ..................................................................................................... 10, 11

35 U.S.C. § 101 .................................................................................................. 2, 18, 25

35 U.S.C. § 112 .......................................................................................................... 23

35 U.S.C. § 284 .......................................................................................................... 15

Cal. Civ. Code § 17200 ............................................................................................... 17

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 2, 3, 19

Fed. R. Evid. 201 ......................................................................................................... 22

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 8, 2018 at 1:30 pm, defendant Price f(x), Inc. ("Price f(x)") will, and hereby does, move the Court, located at 450 Golden Gate Avenue, 17th Floor, Courtroom No. 3, San Francisco, California, for an order dismissing all eight Causes of Action in the Complaint (Dkt. No. 1) brought by plaintiff Vendavo, Inc. ("Vendavo").

Price f(x) brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of Vendavo's Complaint on the grounds that (i) the First Cause under the Defend Trade Secrets Act ("DTSA") fails because it does not plausibly allege any actual trade secret or that Price f(x) misappropriated any such secret; (ii) the Second through Sixth Causes for patent infringement fail because the asserted patent claims are directed to ineligible subject matter under 35 U.S.C. § 101 and because they do not plausibly allege infringement, enhanced damages or willfulness; (iii) the Seventh Cause for copyright infringement fails because it does not plausibly allege copying of any protected element of any registered Vendavo copyright; and (iv) the Eighth Cause under the California Unfair Competition Law ("UCL") fails because it does not plausibly allege any actual violation.  This motion is based on the following Memorandum of Points and Authorities, the arguments of counsel, and any other matters that may properly come before the Court for its consideration.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Vendavo asserts a litany of intellectual property claims, but fails to adequately plead any of them.  It claims to have a variety of unspecified "trade secrets," but does not plausibly allege that Price f(x) misappropriated any secret.  It asserts copyright infringement, but does not plausibly allege copying.  It asserts only that unspecified portions of Price f(x) software are "substantially similar" to unspecified (and not necessarily copyrighted) portions of Vendavo's software.  Vendavo asserts patent infringement, but merely parrots the claim language, without pointing to any particular portions of Price f(x)'s accused products that meet the claim limitations.  It asserts willful patent infringement and claims entitlement to enhanced damages, but fails to plausibly allege pre-suit knowledge or egregious conduct.  The asserted patents are also "directed to" mere mathematical

1   calculations, and are ineligible for patent protection under 35 U.S.C. § 101.  Finally, Vendavo's

2   UCL claim is based on the allegation that Price f(x) has hired away Vendavo employees, which is

3   simply not a UCL violation.[1]  Vendavo's Complaint should be dismissed in its entirety, and at least

4   with respect to the patent Causes, should be dismissed with prejudice, since the eligibility issues

5   cannot be fixed with any amendment.

6   ## II.   STATEMENT OF ISSUES TO BE DECIDED

7           Whether Vendavo's Complaint (First through Eighth Causes of Action) alleging trade secret

8   misappropriation under the DTSA, patent infringement, copyright infringement, and unfair

9   competition under the UCL should be dismissed for failure to state a claim upon which relief can be

10  granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

11  ## III.  RELEVANT FACTUAL BACKGROUND

12          **A.  Vendavo's Complaint**

13          The foundation of Vendavo's Complaint is that numerous Vendavo employees and

14  consultants have defected from the company and joined Price f(x).[2]  Vendavo alleges that in

15  January 2011, three individuals who "worked for Vendavo" founded Price f(x), and that certain of

16  them had substantial access to Vendavo's confidential and trade secret information.  Compl. at ¶¶

17  25–26.  Vendavo further alleges that within the last three years, 18 other Vendavo employees left to

18  work for Price f(x), and that two of these employees—Michal Rychtar and Michal Imrisek—

19  communicated with Price f(x), and started working for the company, while they were still employed

20  by Vendavo.  *Id.* at ¶ 27.  Vendavo alleges on "information and belief" that these employees saved

21  Vendavo trade secret data on USB drives prior to joining Price f(x), but never specifically identifies

22  those alleged trade secrets.  *Id.*  Nor does Vendavo specify where those employees were located (it

23  was the Czech Republic), where they allegedly downloaded files, or which Price f(x) entity hired

24  and employs them (it was not either of the named defendants).  *See id.*

25          Vendavo alleges that Price f(x) misappropriated Vendavo's trade secrets, but does not allege

26

27  [1] Vendavo also identifies on the face of its Complaint a claim for "Breach of Contract," but does not actually assert a cause of action for such a breach.

28  [2] Although Vendavo repeatedly uses "Price f(x)" in its Complaint, it neither defines the term nor makes any attempt to distinguish between Price f(x), Inc. and Price f(x) AG.

any facts suggesting that Price f(x) acquired a particular trade secret with knowledge (or a reason to know) that it was acquired by improper means, or that Price f(x) disclosed or used such a trade secret. All that Vendavo alleges is that it competes with Price f(x), that "Price f(x) has raided Vendavo employees and has targeted Vendavo as its chief competitor in the marketplace," and that Price f(x) brought its products to market faster than Vendavo. *Id.* at ¶¶ 36–37.

Vendavo also asserts that Price f(x) infringes Vendavo copyrights and patents. With respect to the copyright claim, Vendavo alleges only that two Price f(x) products "have source code that is substantially similar to those of [two Vendavo products]." *Id.* at ¶ 117. Vendavo does not offer additional facts. Nor does Vendavo allege that the purportedly "substantially similar" source code is *copyrighted by* Vendavo, as opposed to open source. Vendavo alleges infringement of five patents (but only asserts infringement of claim 1 for each) and identifies Price f(x)'s PriceBuilder and PriceAnalyzer as accused products. *Id.* at ¶¶ 49–112. Vendavo does not explain its infringement theory other than to parrot the claim language. *See id.*

Finally, Vendavo asserts a claim under the UCL. The basis of this claim appears to be that Price f(x) induced Messrs. Imrisek and Rychtar to leave Vendavo and work for Price f(x), and that, as a result, Price f(x) obtained unspecified proprietary Vendavo information. *Id.* at ¶¶ 123–127.

**B. The Asserted Vendavo Patents**

Each of the five asserted patents discloses rules and strategies for pricing products and/or for analyzing the causes of revenue and profit margin changes.

**U.S. Patent No. 8,396,814** is entitled, "Systems and Methods for Index-Based Pricing in a Price Management System" and describes "a flexible pricing method for providing pricing adjustments for a product in a deal in response to price variations in selected indexes." Compl. Ex. A at 2:30–31. Indexes could be, for example, a stock market index or the international price of a commodity. *Id.* at 17:62–18:4. The '814 patent background explains that, "[g]iven the potential volatility in the future price of a particular commodity, it is often to the advantage of both buyer and seller to tie the price of a particular product to an agreed upon index or indexes." *Id.* at 1:41–44. An effective pricing system "must be equipped to perform accurate re-pricing functions in response to changing indexes in deals having index-based pricing terms." *Id.* at 2:8–12. Figure 29,

reproduced below, is a flowchart "illustrating a process for establishing periodic re-pricing for a selected deal." *Id.* at 22:32–34.



The deal can be structured such that a product is re-priced each time a selected index is published (*e.g.*, periodically). *Id.* at 21:65–22:2; 22:44–46. "In yet another embodiment, the deal is structured such that each time the selected index is published, and the difference between the current product price and the selected index is greater than a selected threshold value, the product is re-priced." *Id.* at 22:52–56. Asserted claim 1 of the '814 patent is directed to re-pricing deals when an index price has changed by more than a selected threshold:

> 1. In a computerized integrated price management system, a flexible pricing method for providing pricing adjustments for at least one product in at least one deal in response to price variations in selected indexes, wherein the deals include initial pricing, said method comprising:
>
> selecting a threshold value;
>
> designating an index for the at least one product in said at least one deal, wherein said index has a published index value based upon an index position;
>
> monitoring the index, by a computer, for changes in the published index value;
>
> retrieving, by the computer, all deals of the at least one deal which include the at least one product for which there has been a change in the published index value;
>
> comparing, by the computer, the changed published index value to the initial pricing, and if the difference between the changed published index value and the initial pricing is greater than the selected threshold value, then:

computing, by the computer, a price for said at least one product in said at least one deal based on the changed published index value, wherein the computing the price includes weighting the index and setting an index offset; and

re-pricing, by the computer, all deals using the computed price, wherein the re-pricing all deals includes re-pricing said at least one product:

else, if the difference between the changed published index value and the initial pricing is equal to or less than the selected threshold value, then maintaining, by the computer, the initial pricing of the at least one deal.

**U.S. Patent No. 7,640,198** also refers to "indexes" but defines that term as "essentially a summary measure that states a relative comparison between groups of related items." Compl. Ex. B at 5:48–49. For example, an index can simply be the ratio of a "margin index" for a particular transaction to the "average margin from . . . [a] set of definable transactions." *Id.* at 5:52–56. The S&P 500 is identified as an example of a composite index. *Id.* at 5:63–66. The '198 patent discloses the determination of an index value based on a set of transaction data. Data in a database may be modified or re-formatted to improve formatting or preserve "legacy systems." *Id.* at 3:57–4:1. An "index" column may be inserted in the table. *Id.* at 6:13–15. The user then calculates an index by choosing an index numerator (*e.g.*, a "list price") and dividing it by an index denominator (*e.g.*, "the average of the list prices less the invoice prices"). *Id.* at 6:16–45. Claim 1 addresses this index-creation concept, but allows for dynamic (ongoing) changes to the underlying data, and requires calculation of the index by a "server" which is "coupled to the database over a network":

1. A system for displaying a transaction table including at least one index, useful in association with price modeling and useful in association with a data source, the system comprising:

a database configured to store transaction data, including price modeling data, from the data source and dynamically store changes to the transaction data, including price modeling data, from the data source, and further configured to provide client configuration of the data source, wherein the client configuration includes at least one calculation parameter and at least one mapping parameter and wherein the price modeling data depends upon the client configuration;

at least one server coupled to the database over a network and configured to:

request the transaction data including price modeling data from the database

via the network, wherein the transaction data is requested in accordance with the at least one mapping parameter;

populate the transaction table with the price modeling data;

calculate at least one index base using the price modeling data populated in the transaction table, wherein the at least one index base is the denominator of the at least one index, and wherein the at least one index base is calculated according to the at least one calculation parameter;

identify at least one index numerator from the price modeling data populated in the transaction table,

generate the at least one index by dividing the at least one index numerator by the at least one index base, wherein the at least one index is a summary measure stating relative comparisons between groups of related items;

dynamically update the at least one index in response to changes in the price modeling data;

configure the transaction table to include at least one index column and load the at least one index into the at least one index column;

a display coupled to the server and configured to display at least one of the at least one index in the transaction table, and wherein the display is also configured to display a limited subset of the transaction table, where the subset is selected by a zoom function.

**U.S. Patent No. 7,308,421** is entitled "System and Method for Grouping Products in a Catalog" and discloses application of different types of pricing rules to a product in order to prepare a price quote. Compl. Ex. C at Abstract. The '421 patent criticizes then-existing electronic pricing systems because they "must be manually adjusted each time the vendor wants to alter a priced rule or alter the identity of the products to which the price rule applies." *Id.* at 2:43–47. The '421 patent purports to solve this issue by grouping products together into collections and applying pricing rules to the group. *Id.* at 3:7–28. The collection of products may be "dynamic," which, by way of example, could be a group "in which there are more than 500 units of the product in the inventory." *Id.* at 6:29–30. In other words, "dynamic" indicates that because of the nature of the defined grouping, the size and particular products in a group could change over time. The '421 patent discusses application of a few different types of rules. For example, "[i]nheritance rules may be used to filter out all but one rule of each price rule type for a given product." *Id.* at 9:52–53.

"Assertion rules are used, for example, to avoid combining multiple discounts or to override one discount with another." *Id.* at 9:53–57.  Claim 1 of the '421 patent involves determination of a product collection, evaluating a dynamic rule set, and applying pricing rules:

> 1. In a computer system, a method of preparing a price quote for a product that is selected from among a plurality of products, comprising:
>
> determining whether said product is a member of a particular product collection, including evaluating a dynamic selection rule set associated with said particular product collection; and
>
> when said product is determined to be a member of said particular product collection, the method further comprising:
>
> identifying one or more price rules associated with said particular product collection; and
>
> applying said price rules to said product in order to determine said price quote for said product, wherein said one or more price rules associated with said product collection are determined in accordance with a pricing scheme that is associated with said product collection, wherein said pricing scheme includes at least one inheritance rule to be applied when at least two price rules of said pricing scheme having a similar rule type at different rule levels of a rule hierarchy are applicable to a given product, and wherein the at least one inheritance rule filters out at least one price rule of each of the different rule levels for the given product, at least one assertion rule which defines which of the at least two price rules to ignore when a specific price or price rule type has been applied, at least one arbitration rule for defining a value to use when several price rule are applicable to the given product, and at least one connectivity rule, and wherein the at least one connectivity rule defines interaction between other price rules of said pricing scheme, including combining and prioritizing the other price rules.

**U.S. Patent No. 8,412,598** is a "causality analyzer" patent; it relates to the "causality effects for changes in revenue, margin and margin percentage."  Compl. Ex. D at Abstract.  The background of the patent notes that changes in revenue can be attributed to many factors including "product pricing, changes in the volume of products sold, changes in product mix sold, changes in cost, changes in exchange rates, and any additional factors . . . ."  *Id.* at 1:20–30.  The specification is mainly dedicated to reciting a variety of equations for filtering out the various factors that could potentially affect revenue.  Claim 1 is directed to application of these calculations to "disaggregate each of the change in total margin, the percent margin, and the total revenue."  It recites:

> 1. A causality analyzer implemented on a computer system, useful in association with price management systems, the causality analyzer comprising:

a time period selector implemented on a computer system configurable to select a reference time period and a comparison time period;

a causality modeler implemented on a computer system configurable to receive transaction data and calculate change in total margin, percent margin and total revenue between the reference time period and the comparison time period using the transaction data; and

a causality attributor implemented on a computer system configurable to disaggregate each of the change in total margin, the percent margin and the total revenue by causality effects, wherein the causality effects include price effect, cost effect, quantity effect, product mix effect, customer mix effect, exchange rate effect, new and lost business, and an adjustment change, and further configurable to unbiased [sic] the causality effects where they interact using a finite difference approach, wherein the finite difference approach splits the shared effect according to proportionate percentage of the change attributed only to each effect.

   **U.S. Patent No. 7,912,792** discusses a then-existing need for "pricing models" in view of the data "accessibility" and "volume" issues surrounding "enterprise pricing environments." Compl. Ex. E at 1:30–60. In view of these data issues, the '792 patent purports to disclose methods of "displaying and using predictive structured data," integrating it into "business policies such as pricing guidance and product configuration suggestions," and "deploying those policies." *Id.* at 2:42–47. For example, "analysis of a selected group of transactions residing in a historical database may generate a policy that requires or suggests a rebate for any sale in a given region." *Id.* at 3:64–67. "In some embodiments, policies are derived strictly from historical data." *Id.* at 4:16–17. In others, "an executive committee[] may incorporate forecast data from external sources" which might include, "forward looking price estimations." *Id.* at 4:22–26. By factoring in this manually-input forecast data, "concessions in pricing may be made at the time of proposal generation that may not appear to preserve sales margins, but will, in fact, result in a quality deal over time." *Id.* at 7:67–8:3. The patent also discloses several top-level pricing "guidance" factors that could be considered during price estimations, including, for example, "richness guidance" and "deal size guidance." *Id.* at 8:18–9:48. Claim 1 is a method for generating a price quote based on these guidance factors, as well as a "margin rule" and an "override" principle. A selection is made (by a human) of different price options, and then a price quote is generated. Claim 1 recites:

   1. A method of generating margin sensitive pricing quotation for a customer in an

integrated price adjustment system comprising:

selecting at least one product in a selected product set;

providing pricing data corresponding to the at least one product in the selected product set;

providing at least one guidance element for the at least one product in the selected product set, wherein the at least one guidance element is margin sensitive;

calculating, using a computer, a guidance price for the at least one product based upon the at least one guidance element, wherein the at least one guidance element is selected from the following business priorities, business cycle guidance, richness guidance, and deal size guidance, and wherein business cycle guidance is dependent upon stage of business development with the customer, richness guidance is dependent upon feature number and quality for the product, and deal size guidance is dependent upon a magnitude of total value of the pricing data corresponding to the at least one product;

receiving a margin rule, wherein the margin rule includes one of an established value and a Boolean expression;

receiving a value for at least one override of a group of overrides, wherein the group of overrides includes an override price, an override discount and an override margin;

calculating, using the received value of the at least one override, values for remaining overrides of the group of overrides, wherein the remaining overrides are all the overrides excluding the at least one override for which the value was received;

comparing the values for each of the overrides to the margin rule, wherein the values for the override price, the override discount and the override margin which violate the margin rule are flagged;

presenting the guidance price and the override price on a display;

receiving a selection of one of either the override price or the guidance price; and

generating a quotation based upon the selection such that margin sensitive pricing adjustments are incorporated into the quotation.

## IV.   APPLICABLE LEGAL STANDARDS

Rule 8, Fed. R. Civ. P., requires Vendavo to give Price f(x) "fair notice of what the claim is and the grounds on which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and alteration omitted).  This notice "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Vendavo must plead

"enough facts to state a claim to relief that is plausible on its face," (*id.* at 570), and show "more than a sheer possibility that [Price f(x)] has acted unlawfully," (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Having failed to meet its burden, Vendavo's Complaint should be dismissed.

## V.   ARGUMENT

### A.  Vendavo's Complaint Fails to State a Claim for Relief

#### 1.  The First Cause Fails to Plausibly Allege Trade Secret Misappropriation

To state a claim for trade secret misappropriation under the DTSA, Vendavo must plead facts from which the Court can plausibly infer, among other things, (1) the existence of a trade secret and (2) misappropriation by Price f(x) of that secret on or after May 11, 2016 within the territorial reach of the DTSA.  *See, e.g.*, *Veronica Foods Co. v. Ecklin*, No. 16-cv-07223-JCS, 2017 WL 2806706, at *12–13 (N.D. Cal. June 29, 2017); *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("*Space Data I*"); *see also* 18 U.S.C. §§ 1832, 1837, 1839.  Vendavo fails on all accounts.

##### a.  Vendavo does not identify with sufficient particularity any trade secret

Vendavo "must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Space Data I*, 2017 WL 5013363, at *2 (quotations omitted).  However, Vendavo does little more in its Complaint than generically list its "asserted trade secrets":

> Vendavo's asserted trade secrets include information not expressly covered by its patents.  Such information includes its source code, customer lists and customer-related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, "negative know-how" learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements.

Compl. at ¶ 40; *see also* ¶ 16.

These broad, sweeping categories do not provide sufficient particularity of what constitutes a Vendavo trade secret.  *See Space Data I*, 2017 WL 5013363, at *2 (dismissing DTSA claim where plaintiff failed to "make clear which aspects of its technology and other information are part of

patents and pending patent applications, if any, and which are secret" (internal quotation omitted));
*Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 15-cv-01370-EJD, 2015 WL 8028294, at *3 (N.D. Cal.
Dec. 7, 2015) (dismissing CUTSA[3] claim where "[t]he allegations identifying the purported trade
secret are vague and conclusory, and consist of a generic list of categories of various types of
information."); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-02965-SC, 2013 WL 5770542, at *6
(N.D. Cal. Oct. 24, 2013) ("Plaintiff's complaint is too sweeping and vague for Defendant to be on
notice of what trade secrets are at issue and where the boundary between those secrets and general
knowledge might lie.").

Moreover, Vendavo fails to distinguish between what is an "asserted trade secret" and what
is publicly-known.  For example, Vendavo has publicly disclosed its technology in patents and at
least some source code through its copyright filing (*see, e.g.*, Compl. at ¶¶ 15, 21–23; Exs. A–E),
thereby extinguishing any possible trade secret rights in that material.  *See, e.g.*, *Space Data I*, 2017
WL 5013363, at *2 (public disclosure extinguishes trade secret rights); *Veronica Foods*, 2017 WL
2806706, at *13–14 (same); *Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*, No. 16-cv-
03737-JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017) ("information . . . disclosed in the
course of patent prosecutions" cannot constitute a trade secret).

### b.  Vendavo fails to plausibly allege misappropriation by Price f(x)

Even if Vendavo identifies the existence of a trade secret with sufficient particularity, its
First Cause still fails because Vendavo does not plausibly allege that Price f(x) misappropriated any
such secret.  To state a claim under the DTSA, Vendavo must allege that Price f(x) improperly
acquired, disclosed or used the secret.  *See* 18 U.S.C. § 1839(5) (defining "misappropriation"); *see
also, e.g.*, *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 3007078, at *2 (N.D. Cal. July
14, 2017) ("*Space Data II*") (dismissing trade secret claim for failure to provide factual allegations
that defendant's conduct amounted to misappropriation).  The misappropriation must also have
occurred on or after the DTSA's enactment (May 11, 2016).  *See, e.g.*, *Cave Consulting Grp., Inc. v.*

---

[3] Courts in this district have found the elements of the DTSA and California Uniform Trade Secrets
Act ("CUTSA") to be highly similar and have treated the identification and misappropriation
elements effectively the same when evaluating a motion to dismiss.  *See, e.g.*, *Space Data I*, 2017
WL 5013363 at *1–2.

1    *Truven Health Analytics Inc.*, No. 15-cv-02177-SI, 2017 WL 1436044, at *3–4 (N.D. Cal. Apr. 24,

2    2017).  And, it must fall within the DTSA's geographical reach.  The DTSA applies to conduct

3    outside the United States only if (i) "the offender is a natural person who is a citizen or permanent

4    resident alien of the United States, or an organization organized under the laws of the United

5    States or a State or political subdivision thereof" or (ii) "an act in furtherance of the offense was

6    committed in the United States."  18 U.S.C. § 1837.

7             Nowhere in its Complaint does Vendavo tie any of its boilerplate "trade secrets" to any

8    alleged misappropriation by Price f(x).  In fact, the only "trade secret" that Vendavo identifies by

9    name in connection with any alleged misappropriation is "Vendavo's source code": "Vendavo . . .

10   reasonably believe[s] that all Defendants have misappropriated Vendavo's confidential proprietary

11   trade secret information by, *inter alia*, systematically copying Vendavo's source code and infringing

12   on Vendavo's copyright and patent rights."[4]  Compl. at ¶ 37.  But, Vendavo does not allege any

13   *facts* that would support a remedy under the DTSA; it simply recites a conclusion, without reference

14   to time, geography, or a particular defendant's actions.[5]  *See, e.g.*, *MedioStream, Inc. v. Microsoft*

15   *Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012) (dismissing claim that "failed to identify,

16   which, if any, of the trade secrets in the complaint were encompassed in the [materials] obtained by

17   [the defendant]"); *Space Data II*, 2017 WL 3007078, at *3 (general allegation of post-enactment

18   "continuing use" insufficient to support claim under DTSA); *Cave Consulting*, 2017 WL 1436044,

19   at *5 (dismissing DTSA claim because "plaintiff makes no specific allegations that defendant used

20   the alleged trade secrets after the DTSA's May 11, 2016 enactment.  The Court finds that without

21   facts about when post-enactment use occurred and whether the information disclosed was new or

22   somehow different from the [alleged pre-enactment] misappropriation, plaintiff has failed to state a

23   claim under the DTSA."); *see also* 18 U.S.C. § 1837 (limiting DTSA's extraterritorial reach).

24            A further examination of Vendavo's Complaint makes apparent that Vendavo fails to

25   _____

26   [4] As discussed in Section V.A.1.a, above, Vendavo publicly disclosed at least some source code.
     Thus, even if a bare allegation of "copying" was sufficient (it is not), Vendavo still has not plausibly
27   alleged trade secret misappropriation.  Vendavo alleging misappropriation by copyright and patent
     infringement further confirms it is improperly seeking trade secret protection for public information.

     [5] Vendavo defines "Defendants" to include Price f(x), Inc., Price f(x) AG, and Does 1 through 10.
28   Compl. at 2.

1   plausibly allege that Price f(x) misappropriated any "trade secret."

2          Vendavo first alleges that Marcin Cichon, Christian Tratz, and Martin Wricke left Vendavo

3   in 2009 or 2010, "had extensive access to Vendavo's confidential information" while working for

4   Vendavo, and founded Price f(x) in 2011.  *See* Compl. at ¶¶ 25–26.  Even assuming this is true,

5   lawful access is not misappropriation.  Indeed, Vendavo does not identify any "trade secret" which

6   these individuals allegedly misappropriated.  *See, e.g.*, *GSI Tech., Inc. v. United Memories Inc.*, No.

7   13-cv-01081-PSG, 2015 WL 5655092, at *10 n.119 (N.D. Cal. Sept. 25, 2015) (a plaintiff "cannot

8   substantiate trade secret misappropriation claims against a competitor solely on the basis that a

9   former employee now works for a competitor.").  Nor does Vendavo allege any post-DTSA

10  enactment activity by any of the founders.  *See Cave Consulting*, 2017 WL 1436044, at *5; *Space

11  Data II*, 2017 WL 3007078, at *3; *Avago*, 2017 WL 412524, at *9.

12         Vendavo next alleges that "at least 18 other Vendavo employees have left Vendavo and

13  gone to work at Price f(x) in the past three years."  Compl. at ¶ 27.  This allegation fails for the

14  same reasons as the allegations against the founders.  It further fails because it does not allege that

15  any of these unidentified 18 employees had access to or misappropriated any "trade secret."

16         Last, Vendavo alleges that "former Vendavo employees Michal Imrisek and Michal Rychtar

17  left Vendavo in February of 2017 to join Price f(x);" that "[p]rior to their departure, Inrisek [sic] and

18  Rychtar each communicated with Price f(x), while both maintained employment at Vendavo and

19  had access to Vendavo's confidential information;" that "[d]uring this time, based on Vendavo's

20  review of its information technology, Imrisek and Rychtar accessed Vendavo files on their company

21  laptops and saved data to portable USB drives prior to joining Price f(x);" that "both began to work

22  for Price f(x) – including attending training and sales meetings – while still employed by Vendavo;"

23  and "[i]t is Vendavo's information and belief that Vendavo's trade secrets were saved on the

24  employee's [sic] USB drives prior to their joining Price f(x)."  *Id.* (emphasis omitted).

25         These allegations similarly fail to state a plausible claim against Price f(x)—they simply do

26  not allege that Price f(x) misappropriated any trade secret.[6]  The closest Vendavo comes is its

27

28  ───────────────
    [6] The allegations also fail to specify where these individuals are located (outside the U.S.), or which
    Price f(x) entity hired and employs them (not any of the named defendants and not in the U.S.).

1  allegation that, on "information and belief," the unspecified downloaded files included "trade

2  secrets."  But, Vendavo does not identify particular "trade secrets" that might have been saved, or

3  allege they were ever provided to or used by Price f(x).  *See MedioStream,* 869 F. Supp. 2d at 1113.

4  Moreover, the use of "information and belief" here (and in other select portions of the Complaint)

5  "suggests a possibility of an undue degree of speculation on [Vendavo's] part."  *See Consumer Fin.*

6  *Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-cv-02106-RS, 2016 WL 2961868, at *4

7  (N.D. Cal. May 23, 2016); *Delphix Corp. v. Actifo Inc.*, No. 13-cv-04613-RS, 2014 WL 4628490, at

8  *2 (N.D. Cal. Mar. 19, 2014) (Intermittent use of the phrase "undermines [plaintiff's] argument that

9  the facts it has pleaded are sufficient to support a plausible inference . . . .").

10       Because Vendavo fails to plausibly allege a trade secret or misappropriation by Price f(x) of

11  a secret under the DTSA, Vendavo's First Cause should be dismissed.

12       **2.   The Second through Sixth Causes Fail to Plausibly Allege Patent Infringement**

13            **a.   Vendavo's parroting of the patent claim language is insufficient to state
                   a claim for direct infringement**

14

15       Putting aside that the patent claims are invalid under 35 U.S.C. § 101, (*see* Section V.B,

16  below), Vendavo's infringement pleading does not include any factual allegations about Price f(x)'s

17  products.  Instead, all Vendavo does in its Complaint is parrot the claim language.  Each Cause

18  follows the same boilerplate form: an assertion that "Defendants have infringed, and continue to

19  infringe, literally and/or through the doctrine of equivalents, one or more claims of the [asserted

20  patent], including but not limited to claim 1," followed by assertions parroting the claim language

21  that, "[u]pon information and belief," certain Price f(x) software performs the claim elements.  *See*

22  Compl. at ¶¶ 53–60; 67–71; 78–81; 88–91; 98–110.

23       This Court has previously held that just reciting claim language does not sufficiently plead

24  patent infringement:

25       . . . many of Novitaz's allegations merely parrot claim language, including that
         "CheckPoints detects the user's physical presence in a physical establishment,"
26       "CheckPoints provides marketing messages to its users," and "inMarket stores a
         plurality of tracked customer events within the physical establishment."  These are not
27       factual allegations, as the claim language is what Novitaz must show in order to prove
         infringement. Instead, they are "[t]hreadbare recitals of the elements of a cause of
28       action, supported by mere conclusory statements," which "do not suffice."

*Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795-EJD, 2017 WL 2314407, at *4 (N.D. Cal. May 26, 2017) (citing *Iqbal*, 556 U.S. at 678).  Moreover, Vendavo's use of "[u]pon information and belief" when parroting the claim language confirms the speculative nature of its allegations. *See Consumer Fin.*, 2016 WL 2961868, at *4; *Delphix*, 2014 WL 4628490, at *2.  Vendavo's Second through Sixth Causes alleging direct infringement should thus be dismissed.

### b. Vendavo's enhanced damages and willful infringement allegations fail to plausibly allege pre-suit knowledge or egregious conduct

"Section 284 gives district courts the discretion to award enhanced damages against those guilty of patent infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016). "Consistent with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 1934.  These historical principles counsel towards "limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement." *Id.* at 1935.  Thus, Vendavo must plead sufficient factual allegations that would enable the Court to plausibly conclude that Price f(x) (1) had pre-suit knowledge of the asserted patent and (2) "engaged in 'egregious' conduct that would warrant enhanced damages under *Halo*." *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017).  Vendavo fails on both accounts.

Vendavo makes the same conclusory allegation for four of the five asserted patents:

> Defendants' infringement of the [asserted] patent has been willful and deliberate because Defendants knew or should have known about the [asserted] patent and their infringement of that patent but acted despite an objectively high likelihood that such acts would infringe the patent.  Upon information and belief, a number of individuals who developed the Price f(x) [software] are former Vendavo employees who – while Vendavo employees, and on behalf of Vendavo, which owns the [asserted] patent – would have had knowledge of the patent since it was issued in [date].

Compl. at ¶¶ 61, 72, 82, 111.  With respect to the fifth patent, Vendavo includes only the first sentence; it does not allege any knowledge whatsoever of the patent. *Id.* at ¶ 92.

Vendavo's speculation "[u]pon information and belief" that unidentified former Vendavo employees "would have had knowledge of the [asserted] patent" is insufficient to plausibly demonstrate pre-suit knowledge. *See Delphix*, 2014 WL 4628490, at *1; *Finjan*, 2017 WL

1    2462423, at *5.  Tellingly, nowhere in the Complaint does Vendavo allege that anyone—let alone

2    Price f(x)—actually knew of the asserted patents before Vendavo filed the Complaint.  Even

3    assuming that Vendavo adequately alleges pre-suit knowledge with respect to four of the five

4    patents (it alleges none for the fifth), its allegations still fail because knowledge and infringement

5    alone do not plausibly show that Price f(x) acted egregiously.  *See XpertUniverse, Inc. v. Cisco Sys.,*

6    *Inc.*, No. 17-cv-03848-RS, 2017 WL 4551519, at *6 (N.D. Cal. Oct. 11, 2017) ("Although

7    XpertUniverse has alleged knowledge and continued infringement, it needs to do more to show that

8    Cisco has engaged in 'egregious cases of misconduct beyond typical infringement' that could

9    possibly warrant enhanced damages." (quoting *Halo*, 136 S. Ct. at 1935)); *Finjan*, 2017 WL

10   2462423, at *5 (granting motion to dismiss where plaintiff "has simply made conclusory allegations

11   of knowledge and infringement, which . . . is not enough to plausibly allege egregiousness."

12   (internal quotation and alteration omitted)).  Accordingly, Vendavo's enhanced damages and willful

13   infringement allegations should be dismissed.

14             **3.   The Seventh Cause Fails to Plausibly Allege Copying of a Copyrighted Work**

15             Price f(x) cannot be liable for copyright infringement unless it copied protected elements of

16   a copyrighted work.  *See, e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991);

17   *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003).  This requires Vendavo to

18   allege facts plausibly showing that (i) Price f(x) had access to the protected elements of the work,

19   and (ii) "the works in question 'are substantially similar in their protected elements.'"  *Rice*, 330 at

20   1174 (quoting *Metcalf v. Bocho*, 294 F.3d 1069, 1072 (9th Cir. 2002)).  However, Vendavo does

21   little more than recite the legal standard for copying devoid of any factual detail:

22           116.  Upon information and belief, a number of the individuals who developed the Price
         f(x) PriceBuilder and Price f(x) PriceAnalyzer products are former Vendavo employees
23           who – while Vendavo employees – had access to Vendavo's Price Manager and Profit
         Analyzer software.
24

25           117.  Upon information and belief, and without Vendavo's authorization, Defendants
         have created, or are using others to create, the Price f(x) PriceBuilder and Price f(x)
26           PriceAnalyzer products, which have source code that is substantially similar to those of
         Vendavo's Price Manager and Profit Analyzer Software, and have offered for the same
27           for sale and sold these goods in the United States.

28

1    Compl. at ¶¶ 116–17.  These threadbare allegations fail to meet Vendavo's burden.

2           As a threshold matter, Vendavo does not identify in its Complaint any details concerning its

3    copyrights, such as their registration numbers, when they were filed or the software versions they

4    cover.  Vendavo also fails to include with the Complaint any copyright registrations or

5    corresponding deposits.  Instead, Vendavo states only that it "filed for and received United States

6    copyright registrations in [its computer programs]."  *Id.* at ¶ 23.  There is simply no way based on

7    the information in the Complaint to determine what the protected elements of the copyrights may

8    be.  This failure alone warrants dismissal.

9           Furthermore, this Court has found to be insufficient allegations analogous to Vendavo's.

10   *See Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. 09-cv-05659-WHA, 2011 WL 166198, at

11   *1, *3 (N.D. Cal. Jan. 18, 2011) (granting motion to dismiss where complaint alleged, upon

12   information and belief, that "[f]ormer Richtek employees . . . had access to Richtek's Copyright

13   Works," that "[f]ormer Richtek employees . . . made unauthorized copies, prepared derivative works

14   and distributed copies of Richtek's copyright works," and that "these works . . . are substantially

15   similar to the protected works"); *Synopsys*, 2013 WL 5770542, at *4 (granting motion to dismiss

16   where Plaintiff did not make "clear what Defendant copied" and alleged "simply that Defendant had

17   access to, copied, and prepared derivative works based on the Copyrighted Software"); *Consumer*

18   *Fin.*, 2016 WL 2961868, at *4; *Delphix*, 2014 WL 4628490, at *2.

19          Vendavo's Seventh Cause should therefore be dismissed.

20          **4.   The Eighth Cause Fails to Plausibly Allege Unfair Competition**

21          The UCL defines "unfair competition [to] mean and include any unlawful, unfair or

22   fraudulent business act or practice."  Cal. Civ. Code. § 17200.  Although Vendavo states this legal

23   standard (Compl. at ¶ 121), it fails to allege any facts that Price f(x) engaged in any such act or

24   practice or, given the location of the alleged activities and entities involved, that California law

25   would apply.  Vendavo focuses its claim on Price f(x) allegedly recruiting Vendavo employees:

26          123.  Defendants engaged in unlawful conduct, in violation of both California and
             federal law.

27
            124.  While employed at Vendavo, Michal Imrisek and Michal Rychtar pursued
28          employment outside of Vendavo that created a direct conflict of interest with

1

2

Vendavo's business.  Michal Imrisek and Michal Rychtar purposefully concealed information related to potential employment at Price f(x).

3

4

125.  Price f(x)[7] interfered with the employment of both Michal Imrisek and Michal Rychtar with Vendavo by directly inducing each to leave Vendavo's employ and work for Price f(x), a direct competitor.

5

6

7

8

9

10

11

12

13

14

15

16

17

*Id.* at ¶¶ 123–25.  Vendavo then concludes that "Defendants' acts and practices as described in the preceding paragraphs constitute unlawful and unfair business practices and unfair competition within the meaning of the UCL."  *Id.* at ¶ 126.  Yet, nothing in the "preceding paragraphs" plausibly alleges that Price f(x) engaged in any unlawful or unfair business practice.  It is simply not a UCL violation to recruit or hire another company's employees.  *See, e.g.*, *Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*, 236 Cal.App.4th 243, 261 (2015).  And, nowhere does Vendavo identify what "California [or] federal laws" any of the "Defendants"—let alone Price f(x)— allegedly violated.  *See, e.g.*, *Walker v. Dreyer's Grand Ice Cream, Inc.*, No. 06-cv-4354-PJH, 2006 WL 2642535, at *2 (N.D. Cal. Sept. 14, 2006) ("In order for plaintiffs to successfully plead a cause of action under [UCL] 17200, plaintiffs must allege and identify some state, federal, or local law as the predicate for recovery.").  To the extent that Vendavo argues that the unspecified laws are based on its other Causes of Action, this must fail because Vendavo has failed to state a claim for any Cause, as explained above.

18

Accordingly, Vendavo's Eighth Cause should be dismissed.

19

**B.  The Vendavo Patents are Ineligible Under 35 U.S.C. § 101**

20

21

22

As explained in more detail below, each of these asserted patent claims recites only product pricing strategies and "causality" analysis tools.  The claims are directed to purely abstract ideas, implemented as bare rules and calculations, and are ineligible for patent protection.

23

**1.  The Section 101 Issues are Ripe for Resolution at the Motion to Dismiss Stage**

24

25

26

27

The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced."  *The Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1345 (Fed. Cir. 2014).

28

[7] It is unclear whether Vendavo is referring to Price f(x) AG or Price f(x), Inc. in this paragraph.

On a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a "court may consider the complaint, documents attached to the complaint, documents incorporated by reference in the complaint, and matters of judicial notice." *See, e.g.*, *Coffelt v. NVIDIA Corp.*, No. 16-cv-00457-SJO, 2016 WL 7507763, at *3 (C.D. Cal. June 21, 2016) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). "Claim construction is not an inviolable prerequisite to a validity determination under § 101." *See, e.g.*, *Content Extraction*, 776 F.3d at 1349.

Vendavo's patent infringement allegations should be dismissed with prejudice because the asserted claims are directed to abstract ideas without any recitation of an inventive concept. This conclusion is readily apparent from the face of the Complaint and the patents themselves.

## 2.    The Asserted Patent Claims are Ineligible

Vendavo's asserted patent claims are set out above in Section III.B.[8]  None of these claims are patent-eligible; they fall squarely within a now well-established body of Supreme Court and Federal Circuit law holding that claims directed to mathematical formulas and algorithms, divorced from a particular solution to a technological problem, are unpatentable.

For example, in *Parker v. Flook*, the Court held that a mathematical formula for computing "alarm limits" in a catalytic conversion process was patent-ineligible. 437 U.S. 584 (1978). "'If a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a special purpose, the claimed method is nonstatutory.'" *Id.* at 595 (quoting *In re Richman*, 563 F.2d 1026, 1030 (C.C.P.A. 1977)).  And, in *Gottschalk v. Benson*, the Supreme Court found ineligible patent claims involving an algorithm for converting binary-coded decimal numerals into pure binary form. 409 U.S. 63, 71–72 (1972).  The underlying principle is that while the "application of a . . . mathematical formula to a known structure or process may well be deserving of patent protection," (*see Diamond v. Diehr*, 450 U.S. 175 (1981)), claims simply directed to the

---

[8] Even if Vendavo had identified other asserted claims, it has the burden to show how those other claims are distinct with respect to patent-eligibility issues. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1267 n.2 (Fed. Cir. 2016) ("Because [patent owner] Affinity has failed to present any meaningful argument for the distinctive significance of any claim limitations other than those in claim 14, we treat claim 14 as representative of all the claims for purposes of this appeal."); *see also Williamson v. Citrix Online, LLC*, 212 F. Supp. 3d 887, 896 (C.D. Cal. 2016) ("When a dependent claim and the independent claim it incorporates are not separately argued, precedent guides that absent some effort at distinction, the claims rise or fall together.") (citing *Soverain Software LLC v. Newegg Inc.*, 728 F.3d 1332, 1335 (Fed. Cir. 2013)).

1    rules themselves, with the words "apply it with a computer" are not.  *See Benson*, 409 U.S. at 71–

2    72; *see also Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014).  The asserted claims in

3    this case undoubtedly fall into the latter category.

4         The Federal Circuit has on multiple occasions held "price optimization" and pricing strategy

5    patents—just like those at issue here—to be ineligible.  In *OIP Techs., Inc. v. Amazon.com, Inc.*, the

6    representative claim recited a "method of pricing a product for sale" comprising "testing" prices

7    with potential customers, "gathering, with a machine-readable medium, statistics gathered during

8    said testing about how the potential customers responded," "using a computerized system to read

9    said statistics . . . and to automatically determine . . . an estimated outcome," "selecting a price" for

10   the product, and "sending offers" to potential customers at that selected price.  788 F.3d 1359, 1361

11   (Fed. Cir. 2015).  The Federal Circuit held that the claims are directed to the abstract concept of

12   "offer-based price optimization" which is similar to other "fundamental economic concepts" found

13   to be abstract ideas by the Supreme Court.  *Id.* at 1362.  "[T]hat the claims do not preempt all price

14   optimization or may be limited to price optimization in the e-commerce setting do not make them

15   any less abstract."  *Id.* at 1362–63.  The Federal Circuit rejected the patent owner's analogy to

16   *Diehr*, reasoning that *Diehr* involved "'a well-known mathematical equation . . . used . . . in a

17   process designed to solve a technological problem in conventional industry practice'" and does not

18   "stand for the general proposition that a claim implemented on a computer elevates an otherwise

19   ineligible claim into a patent-eligible improvement."  *Id.* at 1364 (alteration in original and quoting

20   *Alice*, 134 S. Ct. at 2358).

21        Similarly, in *Versata Dev. Grp v. SAP Am. Inc.*, the patent-at-issue was entitled "method

22   and apparatus for pricing products in multi-level product and organizational groups" and described

23   a mechanism for "arranging customers (purchasing organizations) into a hierarchy of product

24   groups."  793 F.3d 1306, 1311–12 (Fed. Cir. 2015).  The claims are very similar to many of those at

25   issue in this case; the representative claim recited:

26        A method for determining a price of a product offered to a purchasing organization
          comprising:

27
          arranging a hierarchy of organizational groups comprising a plurality of branches such

28

that an organizational group below a higher organizational group in each of the branches is a subset of the higher organizational group;

arranging a hierarchy of product groups comprising a plurality of branches such that a product group below a higher product group in each of the branches in a subset of the higher product group;

storing pricing information in a data source, wherein the pricing information is associated, with (i) a pricing type, (ii) the organizational groups, and (iii) the product groups; retrieving applicable pricing information corresponding to the product, the purchasing organization, each product group above the product group in each branch of the hierarchy of product groups in which the product is a member, and each organizational group above the purchasing organization in each branch of the hierarchy of organizational groups in which the purchasing organization is a member;

sorting the pricing information according to the pricing types, the product, the purchasing organization, the hierarchy of product groups, and the hierarchy of organizational groups;

eliminating any of the pricing information that is less restrictive; and

determining the product price using the sorted pricing information.

*Id.* at 1312–13. The Federal Circuit held that the claims are directed to "the abstract idea of determining a price, using organizational and product group hierarchies." *Id.* at 1333. "Using organizational and product group hierarchies to determine a price is an abstract idea that has no particular concrete or tangible form or application. It is a building block, a basic conceptual framework for organizing information." *Id.* at 1333–34. The Federal Circuit also rejected the patent owner's argument that the claims recite an inventive concept, since the "function performed by the computer at each step is purely conventional" and, when considered as a whole, "the claims simply recite the concept of price determination by using organizational and product group hierarchies as performed by a generic computer." *Id.* at 1334.

The claims at issue here are little different than those in *OIP* or *Versata*, and suffer from the same fundamental flaws as the claims in *Benson* and *Flook*; namely, they cover nothing more than mathematical algorithms. *See also In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1987) ("From the specification and the claim, it is clear to us that applicants are, in essence, claiming the mathematical algorithm, which they cannot do under *Gottschalk v. Benson*.").

1    **Claim 1 of the '814 patent** involves nothing more than re-pricing a product if an index

2    price (*e.g.*, the S&P 500) has changed by more than a manually-selected threshold value.  Most of

3    the steps can be (and indeed are designed to be, *see* Compl. Ex. A at, *e.g.*, 18:61–20:24) performed

4    manually, and not with a computer (although, in any event, implementation on a generic computer

5    is irrelevant for patent eligibility purposes (*see Alice*, 134 S. Ct. at 2358)).  The prosecution history

6    confirms that the claim is directed to nothing more than an abstract mathematical algorithm

7    implemented using a generic processor.  During prosecution, the examiner rejected Vendavo's

8    proposed claims under § 101.  Ex. 1 at 5–6.[9]  Vendavo appealed the rejection to the Board of Patent

9    Appeals and Interferences, and the board affirmed the § 101 rejection.  *Id.* at 24–25.  The examiner

10   and Vendavo then agreed that to avoid the § 101 rejection, the examiner would add to the claims a

11   recital that steps in the method must be performed "by the processor."  *Id.* at 27.  This amendment

12   did nothing other than add generic computer hardware to the claims; the amendment was exactly

13   what *Alice* later repudiated.

14       **Claim 1 of the '198 patent** is directed to the abstract idea of calculating an "index" value,

15   *i.e.*, the division of a particular product metric by another metric (such as an average of that product

16   metric).  Data is reformatted or transformed by a chosen "calculation parameter" and a "mapping

17   parameter," and then the "index" value is calculated based on the data.  Nothing more is required;

18   nothing happens to the functioning of the computer, and no tangible product is affected.  The claim

19   only involves calculation and display of numbers.  Like the '814 patent, the generic "database" and

20   "server" limitations resulted from a pre-*Alice* prosecution rejection and amendment.  During

21   prosecution, the examiner rejected the then-pending claims under § 101.  Ex. 2 at 6–7.  In response,

22   Vendavo added the "a database" and "at least one server" limitations, arguing to the examiner that

23   this transformed the claims and made them patentable by adding "the necessary structural

24   ───────────────

      [9] Price f(x) respectfully requests that this Court take judicial notice of certain excerpts from the
25    asserted patent file histories (attached as Exhibits 1–5 to the Declaration of Matthew G. Berkowitz,
      filed concurrently herewith).  *See, e.g., Radware, Ltd. v. A10 Networks, Inc.*, No. 13-cv-02021-
26    RMW, 2014 WL 61047, at *3 (N.D. Cal. Jan 7, 2014) ("courts have taken judicial notice of prior art
      references, patents, and file histories"); *Coinstar, Inc. v. Coinbank Automated Sys., Inc.*, 998 F.
27    Supp. 1109, 1114 (N.D. Cal. 1998); *Coffelt*, 2016 WL 7507763, at *2 n.3; *Classen
      Immunotherapies, Inc. v. Shionogi, Inc.*, 993 F. Supp. 2d 569, 580 n.10 (D. Md. 2014); *Cornucopia
28    Prods., LLC v. Dyson, Inc.*, 881 F. Supp. 2d 1086, 1090 (D. Ariz. 2012); Fed. R. Evid. 201(b).

1    components (hardware) necessary to perform the process . . . ."  *Id.* at 18–19, 25. This is, however,

2    the same argument the Supreme Court later rejected in *Alice*.

3          **Claim 1 of the '421 patent** involves "determining" whether a product is part of a product

4    collection, "identifying" pricing rules, and "applying" those rules.  The "determining" step involves

5    evaluation of a "dynamic selection rule," but this is just a type of rule where the included products

6    can change over time (*e.g.*, "top ten selling items in product catalog," (*see* Compl. Ex. C at 7:52)).

7    In any event, the specifics of the product categories and rules to be applied are beside the point with

8    respect to *Alice* step one, which focuses on "distilling the purpose of a claim," (*Papst Licensing*

9    *GmbH v. Xilinx, Inc.*, 193 F. Supp. 3d 1069, 1084 (N.D. Cal. 2016), *aff'd*, 684 F. App'x 971 (Fed.

10   Cir. 2017)), and the claim's "character as a whole," (*Elec. Power Grp., LLC v. Alstom S.A.*, 830

11   F.3d 1350, 1353 (Fed. Cir. 2016)).  And, without the generic recitation of "in a computer system"—

12   added by amendment during prosecution[10]—the claim would not require a computer at all.

13         **Claim 1 of the '598 patent** relates to the abstract idea of causality analysis.  Like the other

14   claims, it is "directed to" a calculation, *i.e.*, the disaggregation of changes in margin and revenue

15   from a variety of possible effects, such as product mix and customer mix.  The claim has no

16   connection to the underlying functioning of a computer or product.  This is again confirmed by the

17   prosecution history.  During prosecution, the examiner rejected Vendavo's proposed patent claims

18   under § 101.  Ex. 4 at 3–5.  Exactly as happened with the other patents, Vendavo overcame the

19   rejection by adding a recital of generic computer hardware to the claims.  In this case, Vendavo first

20   proposed to add "including a [computer] processor" to the claims, and then, at the examiner's

21   suggestion, instead added the phrase "implemented on a computer system."  *Id.* at 21, 31–32, 39.

22         Finally, **claim 1 of the '792 patent** is directed to the abstract idea of calculating two values

23   (a guidance price and an override price), picking one of them, and generating a price quote based

24   upon that selection.  There is no requirement that all of this even happens on a computer; indeed,

25   certain limitations, such as receiving a selection of the one of two values, are *intended* to be

26

27   ───────────────────

28   [10] During prosecution, Vendavo added the phrase "In a computer system . . ." to the claims, explaining to the Patent Office that "hence Claim 1 and dependent Claims 2–8 are now in compliance with both 35 USC 101 and 35 USC 112."  Ex. 3 at 2, 4.

1   performed manually, per the specification, (*see* Compl. Ex. E at, *e.g.*, 5:41–6:10).  During

2   prosecution, the examiner rejected the then-pending claims under § 101 for being directed to

3   unpatentable subject matter.  Ex. 5 at 12–13.  Just as it did in connection with rejections of the

4   patents discussed above, in response, Vendavo added recitations of generic computer hardware

5   ("using a computer" and "on a display") to the claims, and then argued that this made the claim

6   patentable.  *Id.* at 26, 34–35.  This is wrong under *Alice*.

7       All of the asserted claims are, at their core, purely calculations, and are directed to

8   fundamental economic concepts of pricing optimization, held to be patent ineligible in numerous

9   controlling cases.  *See Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (claims directed to hedging

10  against price fluctuations are ineligible, even when "reduced to a mathematical formula"); *Alice*,

11  134 S. Ct. at 2358 (fundamental concept of intermediate settlement are ineligible); *OIP*, 788 F.3d at

12  1364 (price optimization claims are ineligible); *Versata*, 793 F.3d at 1335 (claims directed to

13  grouped product pricing are ineligible).[11]

14      Looked at differently, but for recitation of the generic computer components (which do not

15  impart patentability, (*see Alice*, 134 S. Ct. at 2358)), all of the claims could be performed entirely in

16  the human mind and are thus abstract.  *See, e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654

17  F.3d 1366, 1373 (Fed. Cir. 2011) ("Methods which can be performed entirely in the human mind

18  are unpatentable.").  A human can evaluate data, and apply pricing rules, or disaggregate causes

19  related to margin and revenue changes in their head.  It is irrelevant whether these calculations

20  might be complex in commercial applications.  *See, e.g.*, *Synopsys, Inc. v. Mentor Graphics Corp.*,

21  839 F.3d 1138, 1150 (Fed. Cir. 2016).

22      To be clear, the claims do not recite an "inventive concept," nor does Vendavo so allege.

23  Rather, the claims recite only application of pricing rules, and in most instances, only purport to

24  streamline manual processes that had become time-consuming by the "volume and organization of

25  relevant data."  *See, e.g.*, Compl. Ex. E at 1:41–42.  The asserted patents do not purport to improve

26

---

27  [11] The claims are not like those in *Diehr*, which the Supreme Court held to be patentable.  There, the
    patentee did "not seek to patent a mathematical formula.  Instead, they [sought] patent protection for
28  a process of curing synthetic rubber," which happened to include a mathematical equation as part of
    the manufacturing process.  *Diehr*, 450 U.S. at 187.

the functioning of the Internet itself or the operation of a computer.  Nor do the asserted claims place any meaningful "limitations . . . on the hardware or software required to be used in the claimed methods or systems."  *See Coffelt*, 2016 WL 7507763, at *11; *BrightEdge Techs. Inc. v. Searchmetrics, Inc.*, No. 14-cv-01009-HSG, 2018 WL 489037, at *8 (N.D. Cal. Jan. 19, 2018).

As such, the claims of each asserted patent are ineligible under 35 U.S.C. § 101 and the patent Causes should be dismissed with prejudice.

## VI.   CONCLUSION

Vendavo has failed to allege sufficient facts to state a claim to relief for any Cause of Action.  Its First Cause for trade secret misappropriation fails to identify any trade secret with sufficient particularity, or plausibly allege misappropriation within the scope of the DTSA.  Its Second through Sixth Causes for direct patent infringement merely parrot the claim language.  Vendavo also fails to adequately plead enhanced damages or willful infringement.  Moreover, the patents are directed to patent ineligible subject matter under 35 U.S.C. § 101.  Its Seventh Cause for copyright infringement fails to identify the protected elements of the copyrighted works or plausibly allege copying.  Finally, its Eighth Cause fails to allege any actual UCL violation.

Accordingly, Price f(x) respectfully requests that the Court grant its motion and enter the proposed order submitted herewith, dismissing at least the patent Causes with prejudice.


Dated:  January 29, 2018                    Respectfully submitted,

                                            SHEARMAN & STERLING LLP

                                            By: /s/ Matthew G. Berkowitz
                                                Matthew G. Berkowitz

                                            *Attorneys for Defendant Price f(x), Inc.*