UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VENDAVO, INC.,

    Plaintiff,

v.

PRICE F(X) AG, et al.,

    Defendants.

Case No. 17-cv-06930-RS

**ORDER GRANTING MOTION TO DISMISS IN PART, WITH LEAVE TO AMEND**

## I. INTRODUCTION

Plaintiff Vendavo, Inc. describes itself as an "industry-leading" provider of business software applications designed for "margin and profit optimization." Defendants Price f(x), Inc. and Price f(x) AG were founded by former Vendavo employees and offer competing enterprise profitability software applications. In this action, Vendavo charges the Price f(x) entities with trade secret misappropriation, patent and copyright infringement, and unfair competition. Defendant Price f(x), Inc. moves to dismiss, contending that all of the claims for relief are inadequately pleaded.[1] Additionally, Price f(x) seeks dismissal of the patent infringement claims, contending the asserted claims of the patents in suit are drawn only to abstract ideas, ineligible for protection under Section 101 of the Patent Act, as elucidated in *Alice*

---

[1] Defendant Price f(x) AG has not appeared. Subsequent references to Price f(x) will mean Price f(x), Inc., unless otherwise specified.

*Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). For reasons explained below, the motion to dismiss will be granted in part, with leave to amend to allege additional facts. The challenge under *Alice* will be denied without prejudice to a reexamination of the eligibility issue on a more developed record.

## II. BACKGROUND

As characterized in the complaint, the gravamen of this action is that numerous former Vendavo employees have defected to the Price f(x) entities and have given that competing business an unlawful head start in the industry by using Vendavo's intellectual property. Specifically, Vendavo alleges that in January 2011, three individuals who "worked for Vendavo" founded Price f(x), and that certain of them had substantial access to Vendavo's confidential and trade secret information. Vendavo further alleges that within the last three years, 18 other Vendavo employees left to work for Price f(x), and that two of these employees—Michal Rychtar and Michal Imrisek—communicated with, and started working for, Price f(x) while they were still employed by Vendavo. Vendavo alleges on "information and belief" that these employees saved Vendavo trade secret data on USB drives prior to joining Price f(x).[2]

Vendavo also asserts that Price f(x) infringes Vendavo copyrights and patents. With respect to the copyright claim, Vendavo alleges that two Price f(x) products "have source code that is substantially similar to those of [two Vendavo products]." Each of the five asserted patents discloses rules and strategies for pricing products and/or for analyzing the causes of revenue and profit margin changes.

---

[2] Rule 11(b) of the Federal Rules of Civil Procedure provides that by submitting a pleading to the court, the signatory is always certifying that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Thus, the phrase "on information and belief" at best constitutes surplusage. It may also create an inference that it is intended as caveat, to provide additional protection should plaintiff be unable to prove any of the factual allegations. It thus creates a further inference that plaintiff may lack knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree.

**U.S. Patent No. 8,396,814** is entitled, "Systems and Methods for Index-Based Pricing in a Price Management System" and describes "a flexible pricing method for providing pricing adjustments for a product in a deal in response to price variations in selected indexes."

**U.S. Patent No. 7,640,198** also refers to "indexes" but defines that term as "essentially a summary measure that states a relative comparison between groups of related items." The '198 patent discloses the determination of an index value based on a set of transaction data.

**U.S. Patent No. 7,308,421** is entitled "System and Method for Grouping Products in a Catalog" and discloses application of different types of pricing rules to a product in order to prepare a price quote. The '421 patent criticizes then-existing electronic pricing systems because they "must be manually adjusted each time the vendor wants to alter a priced rule or alter the identity of the products to which the price rule applies." The '421 patent purports to solve this issue by grouping products together into collections and applying pricing rules to the group.

**U.S. Patent No. 8,412,598** is a "causality analyzer" patent; it relates to the "causality effects for changes in revenue, margin and margin percentage."

**U.S. Patent No. 7,912,792** discusses a then-existing need for "pricing models" in view of the data "accessibility" and "volume" issues surrounding "enterprise pricing environments." In view of these data issues, the '792 patent purports to disclose methods of "displaying and using predictive structured data," integrating it into "business policies such as pricing guidance and product configuration suggestions," and "deploying those policies."

For each of the five patents, Vendavo alleges that one of two specifically-identified Price f(x) products directly infringes the first claim. Vendavo seeks enhanced damages for willful infringement.

III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not

required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard asks for "more than a sheer possibility that a defendant acted unlawfully." Id. The determination is a context-specific task requiring the court "to draw in its judicial experience and common sense." *Id*. at 1950.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

IV. DISCUSSION

A. Trade secret misappropriation

Vendavo alleges misappropriation of "trade secrets" that:

> include information not expressly covered by its patents. Such information includes its source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, "negative knowhow" learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and

CASE NO. 17-cv-06930-RS

4

plans for product enhancements.

Vendavo asserts its trade secret claims pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. Under the DTSA, the "owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service use in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

The term "trade secret" is defined as:

> . . . all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

"Misappropriation" giving rise to liability under the DTSA is defined as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
> (i) used improper means to acquire knowledge of the trade secret;
> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>
> (I) derived from or through a person who had used improper means to acquire the trade secret;
>
> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> (III) derived from or through a person who owed a duty to

CASE NO. 17-cv-06930-RS

5

the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

     (iii) before a material change of the position of the person, knew or had reason to know that—

      (I) the trade secret was a trade secret; and

      (II) knowledge of the trade secret had been acquired by accident or mistake.

The elements of a trade secret misappropriation claim under the DTSA are substantially similar to those under older state statutes. *See*, *e.g.*, Cal. Civ. Code § 3426.1(a), (b), (d); *see also Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) (stating that "the California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act . . . offer essentially the same definitions for our purposes"). The DTSA, however, applies only to "any misappropriation of a trade secret . . . for which any act occurs on or after [May 11, 2016,] the date of the enactment of [the] Act." Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat. 376, 381–82 (May 11, 2016). That said, courts have generally "held that the DTSA applies to misappropriations that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date." *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, 2017 WL 1105648, at *4 (E.D. Pa. Mar. 24, 2017) (collecting district court decisions nationwide). Finally, the DTSA applies to conduct outside the United States only if (i) "the offender is a natural person who is a citizen or permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof" or (ii) "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837.

Price f(x) contends Vendavo has not pleaded sufficient facts to show plausible misappropriation of trade secrets. Indeed, Vendavo has set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets Vendavo has a basis to believe actually were misappropriated here.

CASE NO. 17-cv-06930-RS
6

1    To be sure, "[a] plaintiff need not 'spell out the details of the trade secret,'" *Autodesk, Inc. v. ZWCAD Software Co.,* 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015). Nevertheless, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). Here, the complaint's conclusory and generalized allegations are insufficient.[3]

Moreover, the lack of specificity is exacerbated by the fact that the complaint does not distinguish between Price f(x), Inc. (a Delaware corporation), and Price f(x) AG (a German corporation). Nor does the complaint sufficiently delineate timelines of the alleged acts of misappropriation and use of purported trade secrets. Given the territorial and temporal limits of the DTSA, such facts are foundational to the existence of a viable claim.[4] Accordingly, the trade secret claim is dismissed, with leave to amend.[5]

---

[3] On reply, Price f(x) invokes California Code of Civil Procedure § 2019.210, a state procedural rule requiring a plaintiff to "identify the trade secret with reasonable particularity" prior to commencing discovery. That provision does not create a pleading requirement even in state court, it certainly does not govern the adequacy of the complaint in federal court. If anything, it supports the notion that plaintiffs cannot be expected to disclose publicly in the complaint the very secrets they are seeking to protect.

[4] Price f(x) appears to recognize that it cannot rely on factual matters outside the pleadings to support dismissal. It nevertheless hints that some of the former Vendavo employees referred to in the complaint were outside the United States and may not have even been hired by either of the named defendants. Because the complaint does allege that Price f(x) AG is a foreign company, it is incumbent on Vendavo to allege facts showing conduct within the reach of the statute, even though those particular assertions of Price f(x) are not strictly before the court at this juncture.

[5] Price f(x) seizes on Vendavo's arguments that it has been "forced" to plead in general terms as an effective concession that leave to amend would be futile. Vendavo's characterization of the constraints it believed it faced in drafting the complaint is not tantamount to an admission that it will be able to do no more even in the light of this order.

B. Patent infringement

Vendavo's second through sixth claims for relief respectively assert infringement of each of the five patents in suit. Each claim for relief identifies an accused Price f(x) product by name, and then marches through the elements of claim 1 of the particular patent, alleging that the accused product meets each limitation. Price f(x) insists that approach to pleading infringement is insufficient because allegations that "merely parrot claim language" have been held not to be "factual allegations" and instead to represent only, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice." *Novitaz, Inc. v. inMarket Media, LLC*, , 2017 WL 2311407, at *4 (N.D. Cal. May 26, 2017) (quoting *Iqbal*, 556 U.S. at 678.)

In *Novitaz*, however, the complaint apparently failed to address numerous claim elements entirely. *See id*, ("a number of critical claim elements are not addressed by Novitaz's factual allegations.") Although the allegations here arguably only "parrot" the claim elements, they do represent factual assertions by Vendavo that the accused products read on each and every claim element. Nor in this context does it appear that further explanation of "how" the accused products infringe is critical. Vendavo is asserting, in so many words, that the Price f(x) products function exactly in the manner described by the patent claims.[6]

Accordingly, the infringement allegations are not subject to dismissal. If in the context of amending the complaint, however, Vendavo can provide further details of the basis of its infringement claims consistent with its duties under Rule 11 of the Federal Rules of Civil Procedure, it is encouraged to do so, to eliminate any uncertainty.

Finally, Price f(x) also contends the factual allegations are insufficient to support enhanced damages for willful infringement. Vendavo acknowledges the complaint fails to allege pre-suit knowledge as to one of the patents, and requests leave to correct that omission, which it asserts

---

[6] As such, the allegations go further than those recently found inadequate in *Electronic Scripting Products, Inc. v. HTC America, Inc*., No. 3:17-cv-05806-RS (N.D. Cal March 16, 2018).

was inadvertent. Reading the allegations of the complaint as a whole, the claim of willful infringement is otherwise adequately supported. Again, however, in any amended complaint Vendavo may add factual detail in support of the claim.

C. Copyright infringement

To state a claim for copyright infringement, Vendavo must plausibly allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); see also 17 U.S.C. § 501(a) (stating that infringement occurs when an alleged infringer engages in activity listed in 17 U.S.C. § 106). Vendavo's seventh claim for relief expressly alleges its ownership of copyright in its "Price Manager" and "Profit Analyzer" software products, and Price f(x)'s infringement thereof. Price f(x)'s challenge to the pleading attempts to undermine the plausibility of the infringement claim by raising questions as to exactly what source code has been registered as copyrighted, and when and how defendants may have had access to that code. These arguments go beyond the pleadings and represent possible factual scenarios that Vendavo is not obligated to negate at the pleading stage. Accordingly, the copyright claim is not subject to dismissal. Again, however, in any amended complaint Vendavo is encouraged to clarify the precise subjects of the claim, consistent with its Rule 11 pleading obligations.

D. Unfair competition

As currently pleaded, Vendavo's claim for unfair competition oddly focuses on an assertion that it was wrongful for Price f(x) to "interfere" in the employment relationship between Vendavo and Michal Imrisek and Michal Rychtar, and to induce them to join Price f(x). Vendavo's opposition to the motion to dismiss recasts the claim by pointing to the fact that it also includes a more generalized reference to defendants "acts and practices as described in the preceding paragraphs." As such, Vendavo's intent to advance a derivative claim is clear—the viability of the unfair competition claim turns on whether or not Vendavo can successfully plead

underlying wrongful acts of intellectual property misappropriation. The claim is therefore dismissed with leave to amend in conjunction with amendment of the other claims for relief.

E. *Alice*

As explained in *Alice*, the Supreme Court has "interpreted § 101 and its predecessors ... for more than 150 years" to "'contain[ ] an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.'" The *Alice* court applied a two-step framework for determining patent eligibility, previously articulated in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289 (2012):

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept"—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.

*Alice*, 134 S.Ct. at 2355.

*Alice* also explained, "The 'abstract ideas' category embodies "the longstanding rule that '[a]n idea of itself is not patentable.'" *Id*. at 2355; see also *Le Roy v. Tatham*, 14 How. 156, 175, 14 L.Ed. 367 (1853). ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right").

*Alice* repeated the caution given in *Mayo*, however, that the exclusion for "abstract ideas" must not be applied too broadly, "we tread carefully in construing this exclusionary principle lest it swallow all of patent law." 134 S.Ct. at 2354 (citing *Mayo*, 132 S.Ct. at 1293–1294.) At some level, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S.Ct. at 1293.

On the facts before it, the *Alice* court also expressly declined to "labor to delimit the precise contours of the 'abstract ideas' category." 134 S.Ct. at 2357. Instead, it merely found that the concept of providing an "intermediated settlement" was not meaningfully distinguishable from the idea of "risk hedging" at issue in *Bilski v. Kappos,* 561 U.S. 593 (2010). In both instances, the idea involved was "a fundamental economic practice long prevalent in our system of commerce." *Id*. at 2356.

Here, Price f(x) contends that each of the five asserted patent claims represent nothing more than unpatentable "mathematical formulas and algorithms, divorced from a particular solution to a technological problem." Price f(x) particularly stresses the fact that each claim was initially rejected by the examiner under Section 101, and was allowed only after language was added expressly calling for computerized implementation of the procedures. As Price f(x) correctly observes, merely using generic computer systems to execute otherwise abstract ideas is exactly what *Alice* held to be insufficient. "[I]f a patent's recitation of a computer amounts to a mere instruction to 'implemen [t]' an abstract idea 'on . . . a computer," . . . that addition cannot impart patent eligibility." *Alice*, 134 S. Ct. at 2358 (citation omitted).

Nevertheless, at this juncture Price f(x) has not met its burden to show that the asserted patent claims are invalid under Section 101. While Vendavo is wrong to argue that Price f(x) must address every possible limitation and show that all 99 claims in the five patents in suit fail both steps of the *Alice* test, its characterization of Price f(x)'s *Alice* argument as "cursory" and overly "generalized" is apt. Even though Price f(x) need only address the five asserted claims, its presentation provides inadequate analysis and explanation of the substance of the claimed inventions, the prosecution history, and potential construction issues to permit drawing informed conclusions as to which side of the abstract idea/inventive concept line any or all of these patent claims lie.

Vendavo's opposition stresses that it does not have the initial burden to show that the claims are patent-eligible. It nevertheless offers a brief explanation as to how it believes each of the patents identifies a problem in the field of computer-based price management systems, and

CASE NO. 17-cv-06930-RS

11

specifically claims a solution to that problem. Vendavo contends, therefore, that the claims go beyond mere abstract ideas and pass muster under both steps of the *Alice* analysis. While it remains to be seen which side ultimately will prevail on these issues, there is no reason to conclude at this juncture that Vendavo lacks even a colorable argument to support the eligibility of the claims.

Finally, although Price f(x) is correct that Vendavo's opposition does not identify any specific claim construction issue, the larger point is that a more developed record and appropriately-comprehensive briefing is warranted prior to any determination of the patentability issue. Accordingly, the motion to dismiss on section 101 grounds is denied. While Price f(x) is not precluded from raising the challenge again in any motion to dismiss the amended complaint, it is discouraged from doing so unless it can provide a more robust analysis of all the pertinent issues within the confines of such a motion.

## IV. CONCLUSION

The motion to dismiss is granted with leave to amend to the extent specified above, and otherwise denied. Any amended complaint shall be filed within 20 days of the date of this order.

**IT IS SO ORDERED**.

Dated: March 23, 2018

_____
RICHARD SEEBORG
United States District Judge