UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENDAVO, INC.,<br>　　　　Plaintiff,<br>　v.<br>PRICE F(X) AG, et al.<br>　　　　Defendants. | Case No. 17-cv-06930-RS (KAW)<br><br>**ORDER GRANTS IN PART AND DENIES IN PART DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Dkt. No. 113 |

On December 5, 2017, Plaintiff Vendavo, Inc. filed the instant case against Defendants Price f(x) AG and Price f(x), Inc. Plaintiff brings claims for misappropriation of trade secrets, patent infringement, copyright infringement, and unfair competition. (*See* First Amended Compl. ("FAC") ¶¶ 4-5, Dkt. No. 43.)

On March 8, 2019, Defendants filed a motion for sanctions based on Plaintiff's alleged failure to comply with the Court's February 12, 2019 order. (Defs.' Mot. for Sanctions, Dkt. No. 113.) Having considered the parties' filings, the relevant legal authority, and the arguments made in the March 21, 2019 hearing, the Court GRANTS IN PART AND DENIES Defendants' motion for sanctions.

## I. BACKGROUND

On February 15, 2018, Defendants served Interrogatory No. 4, which states: "For each Asserted Copyright identify and describe (i) the original portions, (ii) any material constituting pre-existing material, as identified in the copyright application or registration, and (iii) the portions that are 'substantially similar' to any Price f(x) product." (Berkowitz Decl. ¶ 3, Dkt. No. 113-1.) Plaintiff originally objected that the Interrogatory sought a legal conclusion or expert opinion and was premature, as Defendants had yet to produce its source code. (*See* Oliver Decl., Exh A at 3,

Dkt. No. 121-3.)

On April 5, 2018, Plaintiff filed the operative complaint, alleging that Michal Imrisek and Michal Rychtar, left Plaintiff's employment to join Defendants. (FAC ¶ 47.) Plaintiff further alleges that while still employed by Plaintiff, Mr. Imrisek and Mr. Rychtar began working for Defendants. (FAC ¶ 47.) Plaintiff also asserts that Mr. Imrisek copied Plaintiff's trade secrets, and then provided that information to Defendants. (FAC ¶ 47.) Thus, Plaintiff believes that Defendants use Plaintiff's trade secrets for its products. (FAC ¶ 54.) With respect to its copyright claim, Plaintiff alleges that Defendants created "the PFX PriceBuilder and PFX PriceAnalyzer products, which have source code that is substantially similar to those of [Plaintiff]'s Price Manager and Profit Analyzer software . . . ." (FAC ¶ 159.)

On May 14, 2018, Plaintiff provided supplemental responses to Defendants' Interrogatory No. 4. (Oliver Decl., Exh. A at 4.) Plaintiff stated that it would make its copyrighted source code available, but that "the burden to 'identify and describe' its source code is substantially the same for either party." (*Id.*) Plaintiff also identified the free and open source projects in its code base. (*Id.* at 4-11.)

On August 27, 2018, Defendants sent a letter to Plaintiff, stating that their expert had performed a comparative analysis between Plaintiff's and Defendants' source code. (Berkowitz Decl. ¶ 3, Exh. A.) Defendants explained that their expert found no basis for the copyright infringement claim, as his analysis found "1,000 matches of logical equivalence." (Berkowitz Decl., Exh. A at 1.) Of those 1,000 matches, there were "only four instances of matching syntax between" the source files, but that those identical matches "consist entirely of well-known boilerplate Java code that is not copyrightable to [Plaintiff]." *Id.* On September 27, 2018, Defendants made its source code analysis available to Plaintiff. (Berkowitz Decl. ¶ 3.)

Defendants state they then followed up several times, requesting that Plaintiff supplement its response to Interrogatory No. 4. (Berkowitz Decl. ¶ 3.) On February 11, 2019, Defendants requested a teleconference with the undersigned to address their request for supplementation. (Dkt. No. 110.) In support of their request, Defendants' counsel stated that Plaintiff had "indicated that it would eventually supplement the interrogatory, and would address this in greater

2

detail after serving its supplemental patent infringement contentions on January 10, 2019."
(2/11/19 Berkowitz Decl. ¶ 11, Dkt. No. 110-1.) Throughout January 2019, Defendants followed up with Plaintiff regarding the supplementation. (2/11/19 Berkowitz Decl. ¶ 12.) On January 22, 2019, Defendants were informed Plaintiff's lead counsel had changed firms. (2/11/19 Berkowitz Decl. ¶ 12.) Between January 22, 2019 and February 7, 2019, Defendants reached out to Plaintiff regarding the supplementation and offering to give more time in exchange for continuing other deadlines, but Plaintiff's lead counsel did not respond. (2/11/19 Berkowitz Decl. ¶¶ 12-15.) Defendants then filed their request for a teleconference. (2/11/19 Berkowitz Decl. ¶ 16.)

On February 12, 2019, the Court issued an order on Defendants' request. (Order, Dkt. No. 111.) The Court found that in light of Plaintiff's agreement to supplement, a teleconference was unnecessary. (*Id.* at 2.) The Court ordered Plaintiff to supplement its responses within ten days unless the parties stipulated otherwise, and warned that failure to comply could result in the imposition of sanctions. (*Id.*) Plaintiff did not appeal the Court's order.

Plaintiff states that on receipt of the Court's order, it incorrectly docketed the due date for responses. (Oliver Decl. ¶ 6.) On February 27, 2019, Defendants contacted Plaintiff regarding the failure to supplement. (Berkowitz Decl. ¶ 6.) Plaintiff provided the supplemental responses that same day. (Berkowitz Decl. ¶ 8; Oliver Decl. ¶ 7.) With respect to Interrogatory No. 4, Plaintiff responded:

> Vendavo does not have access to its files at this time given its counsel's recent change of firms. Therefore, Vendavo does not have access to its prior response to this Interrogatory. That Response and the Objections therein are incorporated in their entirety in this supplemental response. Vendavo further provides as follows:
>
> The computer programs embodied in Vendavo's Profit Analyzer, Business Risk Alerts, Price Manager, Segmentation Manager, Price Optimization Manager, Deal Guide and Deal Manager software are original literary works within the meaning of 17 U.S.C. § 101, and were developed by it after a significant expenditure of time and money. Vendavo has produced its copyrighted software to Price F(x), and it incorporates its software in its entirety in its Response. Vendavo also incorporates its response summarizing key trade secret information regarding its source code as detailed above in Response to Interrogatory No. 1.
>
> The copyright that subsists in Vendavo's Profit Analyzer, Business Risk Alerts, Price Manager, Segmentation Manager, Price

3

| | |
|---|---|
| 1 | Optimization Manager, Deal Guide and Deal Manager software belongs exclusively to Vendavo. Vendavo filed for and received United States copyright registrations in these works. |
| | |

> Optimization Manager, Deal Guide and Deal Manager software belongs exclusively to Vendavo. Vendavo filed for and received United States copyright registrations in these works.
>
> No pre-existing material was identified on the copyright registration.
>
> Discovery is ongoing, and Vendavo will supplement this response as additional information becomes available. At present, Vendavo contends that the portions of PFX source code identified in Vendavo's Second Updated Infringement Contentions, and the portions of PFX source code embodying the technical trade secrets identified in the amended response to Interrogatory No. 1, are substantially similar to Vendavo's copyrighted code.

(Oliver Decl., Exh. A at 12.)

On March 5, 2019, Plaintiff contacted Defendants and informed them that Plaintiff's consultant, Alan Purdy, planned to go to Defendants' office to review the code on March 6, 2019, stating that Mr. Purdy would require "a machine onto which he can load both code bases and additional review tools." (Oliver Decl. ¶ 11.) On March 6, 2019, Mr. Purdy performed the initial review of Defendants' code with Plaintiff's code. (Oliver Decl. ¶ 12.) Plaintiff requested that Defendants allow Mr. Purdy to retain a text file of information based on his review, but Defendants refused and stated they would review the results and e-mail them to Plaintiff. (Oliver Decl. ¶ 13.) On March 8, 2019, Defendants e-mailed Plaintiff the information Mr. Purdy requested to review. (Oliver Decl. ¶ 14.) That same day, Defendants filed the instant motion for sanctions.

On March 22, 2019, Plaintiff filed its opposition. (Plf.'s Opp'n, Dkt. No. 116.) Plaintiff also supplemented its response, which added:

> [T]he source code copyright abstraction, filtration and comparison analysis, originally adopted developed by the Second Circuit in *Computer Associates v. Altai*, and adopted nationwide, will be dispositive of the substantial similarity between Vendavo's original copyrighted code and PFX's infringing code. That test is solely the province of expert testimony; it calls, *inter alia*, for expert opinion on merger, scenes a faire, external considerations including computer hardware constraints, and an analysis of material that exists in the public domain. No trial date has been set, fact discovery is ongoing, and no expert report dates have been set in this case. Vendavo believes that in an AFC analysis at least the portions of PFX source code embodying the technical trade secrets identified in the amended response to Interrogatory No. 1, will be shown to be substantially similar to Vendavo's copyrighted code. Vendavo has conducted a mechanical comparison of only the latest version of the

parties' source code. This is an analysis of literal copying or cloning of source code, and not the AFC analysis that will be performed as part of expert discovery. And following the mechanical review of the code, Vendavo identifies PFXSC_00362 through PFXSC_00367, which were generated as part of Vendavo's consultant's review and produced to Vendavo by PFX on March 8, 2019.

(Oliver Decl., Exh. A at 13-14.) PFXSC_00362 through PFXSC_00367 is the text file of information compiled by Mr. Purdy, which Defendants had e-mailed to Plaintiff on March 8, 2019. (Oliver Decl. ¶ 14.) These documents identify 1,400 matching run lines. (Oliver Decl. ¶ 17.) An excerpt of PFXSC_00363 is attached as Exhibit C to Mr. Oliver's declaration.

On March 29, 2019, Defendants filed their reply. (Defs.' Reply, Dkt. No. 120.) Defendants also attached a declaration by Firas Abuzaid, which states that the character matches identified by Plaintiff in PFXSC_00362 through PFXSC_00367 are "material that is entirely generic or open source." (*Id.* at 1; *see also* Abuzaid Decl. ¶ 6-8.)

## II. LEGAL STANDARD

Defendants seek sanctions based on Plaintiff's asserted violations of the February 12, 2019 discovery order. "Federal Rule of Civil procedure 37 provides for sanctions available for failure to make disclosures or cooperate in discovery." *Gordon v. Cty. of Alameda*, No. CV-06-2997-SBA, 2007 WL 1750207, at *2 (N.D. Cal. June 15, 2007). Specifically, Rule 37(2)(A) states that if a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action" and "prohibiting the disobedient party form supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."

Additionally, "[c]ourts are invested with inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F. 2d 363, 368 (9th Cir. 1992) (internal quotation omitted). Those inherent powers include "the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Id.* (internal quotation and modification omitted).

## III. DISCUSSION

Defendants request that: (1) the Court order Plaintiff to provide a complete response to Interrogatory No. 4 with a sworn certification by Plaintiff's lead counsel that the response is complete and that there is a good faith basis to continue with the copyright claim, (2) the Court issue a formal warning that further noncompliance may lead to dismissal of the copyright claim, and (3) the Court order Plaintiff to pay monetary sanctions. (Defs.' Mot. at 1.)

Plaintiff contends that its response is sufficient, such that additional supplementation and/or sanctions is not warranted. As an initial matter, Plaintiff argues that the interrogatory is an improper contention interrogatory. (Plf.'s Opp'n at 6-7.) The Court disagrees. As Defendants correctly point out, Plaintiff never objected to the interrogatory as being an improper contention interrogatory. (*See* Oliver Decl., Exh. A at 3-4, 12-14.) As this specific objection was never raised, Plaintiff waived the objection.

Plaintiff primarily contends that its response is adequate at this stage of the litigation. Importantly, in so arguing, Plaintiff distinguishes between its literal copyright infringement claim and its non-literal copyright infringement claim.

### A. Literal Infringement Copyright Claim

Plaintiff contends it has sufficiently responded to Defendants' interrogatory with respect to literal infringement. First, Plaintiff argues that it has adequately identified "the original portions" of the asserted copyright at issue because Defendants have had access to Plaintiff's source code since August 2018. (Plf.'s Opp'n at 7.) Plaintiff "maintains that its entire source code, including the structure, sequence and organization, is its original work, notwithstanding that portions of that work use open-source packages—which of course are not covered by [Plaintiff]'s copyright." (*Id.* at 7 n.3.) Defendants respond that Plaintiff's source code is not a copyright, and that Plaintiff "has not even produced the electronic deposit on file with the US copyright office that is supposedly registered." (Defs.' Reply at 5.) The Court finds that Plaintiff cannot rely on its production of the source code to satisfy Defendants' interrogatory request that Plaintiff identify "the original portions" of the copyright. As Plaintiff itself concedes, portions of the source code are not covered by the copyright. Thus, pointing to the entire source code is insufficient. Plaintiff shall

identify "the original portions" of the copyright. With respect to Plaintiff's alleged failure to produce the electronic deposit on file with the U.S. Copyright Office, however, this appears to be a separate issue from the interrogatory, as this concerns document production. The Court orders the parties to meet and confer on this issue.

Second, Plaintiff contends that it has identified "any material constituting pre-existing material, as identified in the copyright application or registration" because it provided a list of the open source projects used in its source code. (Plf.'s Opp'n at 7; *see* Oliver Decl., Exh. A at 4-11.) Defendants reply that this is likewise insufficient, as Plaintiff may have licensed other code from third-parties, and that the code may also include generic commands and computer-generated files such as .git files. (Defs.' Reply at 5.) Moreover, Defendants argue that Plaintiff did not identify the open source portions of the copyright or what code was used from those open source projects. The Court agrees with Defendants. A list of open source projects used in the source code is insufficient, as this fails to identify portions of the copyrighted code itself that constitutes pre-existing material. Instead, it requires that Defendants compare the open source projects with the copyrighted code to determine which portions match. Plaintiff must specifically identify the pre-existing material, which includes both code used from open source projects and any other pre-existing material.

Finally, Plaintiff argues that it has identified "the portions that are 'substantially similar' to any Price f(x) product" because it provided a listing of Defendants' code that literally copies Plaintiff's code. (Plf.'s Opp'n at 9.) At the hearing, the parties clarified that this listing is PFXSC_0362-367, which is a 460 megabyte output of a software program that runs a mechanical comparison for character matches in two code bases. (*See also* Defs.' Reply at 6.) This comparison includes any matches, even if the code is not copyrightable or original. The Court finds the production of this output insufficient to satisfy Defendants' interrogatory. At the hearing, Plaintiff stated that it could go through the matches identified in this output and identify the specific portions that consist of original work, while stripping out the pre-existing material. The Court orders Plaintiff to supplement its response regarding the portions that are "substantially

similar" by doing so.[1]

## B. Non-Literal Infringement Copyright Claim

"The Ninth Circuit has recognized three elements of software that can be eligible for copyright protection: (1) the software's 'literal elements' such as the actual source and object codes; (2) the software's 'individual non-literal elements' such as discrete visual and audible components; and (3) the software's 'dynamic non-literal elements' such as the real time experience and operation of the software." *El-Sedfy v. WhatsApp Inc.*, Case No. 16-cv-4056-JCS, 2016 U.S. Dist. LEXIS 150760, at *14 (N.D. Cal. Oct. 31, 2016) (internal quotation omitted). To determine whether non-literal elements of two or more computer programs are substantially similar, some courts apply the three-part Abstraction-Filtration-Comparison test. The first step, abstraction, requires that the court "dissect the allegedly copied program's structure and isolate each level of abstraction contained within it. This process begins with the code and ends with an articulation of the program's ultimate function." *Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 707 (2d Cir. 1992), *cited in Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1085 (9th Cir. 2005). The second step requires "separating protectable expression from non-protectable material," thus helping define the scope of the plaintiff's copyright. *Id.* The final step concerns "whether the defendant copied any aspect of this protected expression, as well as an assessment of the copied portion's relative importance with respect to the plaintiff's overall program." *Id.* at 710.

Plaintiff argues that as to its non-literal copyright infringement claim, any further response would require expert testimony to determine if the Abstraction-Filtration-Comparison test is satisfied. (Plf.'s Opp'n at 9-10.) At the hearing, Defendants pointed out that Plaintiff could, at a minimum, identify the non-literal elements that Plaintiff asserts are infringing, such as the look, feel, and features of the user interface. For example, this may include the locations of menus or how the click-through menus work. Plaintiff agreed that it could do so. Accordingly, the Court

---

[1] Defendants also argue that the matches are insufficient because all of the verbatim matches picked up by Plaintiff's code-matching program are "either a .git, Apache Ant or Checkstyle file," all of which cannot be part of the asserted copyright. (Defs.' Reply at 6.) This, however, is a dispute on the merits regarding whether the matches are legally sufficient to support a literal copyright infringement claim, not whether the discovery response is sufficient.

orders Plaintiff to identify the allegedly infringing non-literal elements, including the look and feel of the user interface, the features of using the software, and any other elements related to the "discrete visual and audible components" or "the real time experience and operation of the software." *See El-Sedfy*, 2016 U.S. Dist. LEXIS 150760, at *14.

The Court, however, finds that Plaintiff is not required at this time to identify the code underlying these non-literal elements. As Plaintiff explained, the code goes to why the non-literal elements are infringing, which appears to require expert opinion and the application of the Abstraction-Filtration-Comparison test.

### C. Sanctions

The Court finds that sanctions are not warranted. While Plaintiff was late in providing its required responses, Plaintiff did ultimately provide supplemental responses on February 27, 2019. (*See* Oliver Decl. ¶ 9.) Moreover, prior to Defendants' filing of the motion on March 8, 2019, Plaintiff's expert, Mr. Purdy, went to Defendants' office to review the code on March 6, 2019. (Oliver Decl. ¶ 11.) Defendants contend that it did not know what Mr. Purdy was working on, but it appears Plaintiff had informed Defendants that Mr. Purdy "will need access to a machine that has the PFX code, as well as a machine onto which he can load both code bases and additional review tools." (*See* Defs.' Reply at 3; Oliver Decl. ¶ 11.) Defendants then had the opportunity to review Mr. Purdy's results before Defendants e-mailed the information -- including PFXSC_00362 through PFXSC_00367, which identifies 1,400 matching run lines between Plaintiff's software and Defendants' source code, to Plaintiff on March 8, 2019. (Oliver Decl. ¶ 14.) Thus, it appears Defendants' had notice that Plaintiff was in the process of reviewing the code, and had access to the responsive information prior to the filing of its motion for sanctions. To the extent Defendants had concerns about the substance of Plaintiff's interrogatory response, the parties should have met and conferred before submitting a joint letter. Under these circumstances, the Court finds that Defendants' motion for sanctions is premature and that sanctions are not warranted.[2]

---

[2] The Court also notes that while it is ordering Plaintiff to provide supplemental responses, the substantive merits of Plaintiff's prior responses were not previously addressed. Rather, the

9

That said, the Court also notes that in the future, Plaintiff must be mindful of the deadlines imposed by the Court.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion. Plaintiff is ordered to provide supplemental responses by:

(1) identifying the original portions of the code and any material constituting pre-existing material;

(2) reviewing the output in PFXSC_0362-367 and identifying which matches are original material or open source, and stripping out the pre-existing material; and

(3) identifying the allegedly infringing non-literal elements, including the look, feel, and features of the user interface, as well as any other elements related to the discrete visual and audible components or real time experience and operation of the software.

Plaintiff's responses are due within 30 days of the date of this order. If Plaintiff needs additional time, the parties shall meet and confer on an appropriate extension. The Court denies Defendants' request for additional sanctions.

IT IS SO ORDERED.

Dated: May 6, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

Court's prior order was based on Plaintiff's agreement to supplement. (*See* Order at 2.)