EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

VENDAVO, INC.,

                                Plaintiff,

     v.

KIM LONG, PRICE F(X) AG, AND PRICE F(X), INC.,

                               Defendants.

Case No.: 1:19-cv-01725
Judge Robert M. Dow, Jr.
Magistrate Judge Young B. Kim

## DECLARATION OF MATTHEW G. BERKOWITZ IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER

I, Matthew G. Berkowitz, declare as follows,

1.      I am a partner at the law firm of Shearman & Sterling LLP, counsel for Defendants Price f(x), Inc. and Price f(x) AG (together, "PFX"). I am a member in good standing of the Bar of the State of California and have been admitted *pro hac vice* in the above-referenced action. I make this declaration based on personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

2.      Attached hereto as Exhibit A is a true and correct copy of excerpts from the Marcin Cichon deposition transcript dated May 9, 2019.

3.      Attached hereto as Exhibit B is a true and correct copy of excerpts from the Dan Costanzo deposition transcript dated May 8, 2019.

4.      Attached hereto as Exhibit C is a true and correct copy of excerpts from the Vicki Roberts deposition transcript dated May 20, 2019.

5.      Attached hereto as Exhibit D is a true and correct copy of excerpts from the Gabriel Smith deposition transcript dated May 22, 2019.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 2, 2019     <u>/s/ Matthew G. Berkowitz</u>
              Matthew G. Berkowitz

## CERTIFICATE OF SERVICE

I, Nicholas J. Ciaccio, hereby certifies that, on July 2, 2019, I served a true and correct copy of the foregoing **DECLARATION OF MATTHEW G. BERKOWITZ IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER** on all the following counsel of record by electronic mail and through the Court's CM/ECF:

Sara M. Skulman
**GREENBERG TRAURIG, LLP**
77 W. Wacker Drive
Suite 3100
Chicago, IL 60601
Tel: (312) 456-8400
Fax: (312) 456-8435
Email: skulmans@gtlaw.com

*Attorneys for Plaintiff*

Samuel Chase Means
**GREENBERG TRAURIG, LLP**
77 W. Wacker Drive
Suite 3100
Chicago, IL 60601
Tel: (312) 456-8415
Email: meansc@gtlaw.com

*Attorneys for Plaintiff*

L. Scott Oliver (*Pro Hac Vice*)
**GREENBERG TRAURIG, LLP**
1900 University Avenue
5th Floor
East Palo Alto, CA 94303
Tel: (650) 328-8500
Fax: (650) 328-8508
Email: oliverls@gtlaw.com

*Attorneys for Plaintiff*

Timothy B. Hardwicke
Andrew H. Schrag
**GOODSMITH GREGG & UNRUH LLP**
150 S. Wacker Drive
Suite 3150
Chicago, IL 60606
Tel: (312) 646-2014
Fax: (312) 322-0056
Email: thardwicke@ggulaw.com
    aschrag@ggulaw.com

*Attorneys for Defendant Kim Long*

/s/ Nicholas J. Ciaccio
Nicholas J. Ciaccio

# EXHIBIT A

1

2        IN THE UNITED STATES DISTRICT COURT

3       FOR THE NORTHERN DISTRICT OF ILLINOIS

4           EASTERN DIVISION

5

6 VENDAVO, INC.,

7         Plaintiff,      Civil Action No.

8     vs.            1:19-cv-01725

9 KIM LONG, PRICE F(X) AG, and

10 PRICE F(X), INC.,        Judge Robert M. Dow

11        Defendants.

12 ------------------------------

13

14

15   ** HIGHLY CONFIDENTIL - ATTORNEYS' EYES ONLY **

16

17     VIDEOTAPED DEPOSITION OF 30(b)(6) WITNESS

18            MARCIN CICHON

19          Chicago, Illinois

20        Thursday, May 9, 2019

21

22

23  Reported by:

24  JANICE M. KOCEK, CSR, CLR

25  JOB NO. 160252

1   M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2     BY MR. OLIVER:

3        Q.   You can answer.

4        MR. BERKOWITZ:  You -- you can

5     answer.

6        THE WITNESS:  Well -- as I said

7     before, we -- we knew each other from the

8     past, so there was personal relationships

9     established.  And, you know, we had our

10    contacts over LinkedIn.  I'm sure we had

11    our private e-mail addresses.  It can be

12    well that Vicki reached out to

13    Patrick Adams or she reached out to

14    Gabriel Smith or she reached out to me.  I

15    don't remember who she reached out to.

16    BY MR. OLIVER:

17        Q.   Sir, you said "we knew each other

18    from the past."

19        How did you know Vicki Roberts?

20        A.   We worked for the same company.

21        Q.   What company?

22        A.   Vendavo.

23        Q.   Did you overlap at Vendavo?

24        A.   Yes.

25        Q.   For how long?

1    M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2              A.    I don't know when Vicki started.  I

3    know when I started and when I ended.  And --

4    and during this time, our work at Vendavo

5    overlapped.

6              Q.    When did you start at Vendavo?

7              A.    In summer 2006.

8              Q.    When did you leave Vendavo?

9              A.    In summer 2010.

10             Q.    During what portion of that

11   2006-through-2010 period was Vicki Roberts

12   working at Vendavo?

13             A.    I don't know.  As I said, I don't

14   know when she started with Vendavo.

15             Q.    A month?  A year?  Two years?

16             A.    No, it was several years for sure.

17             Q.    Three years?

18             A.    I don't know.

19             Q.    Two years?

20             A.    As I said, I don't know.

21             Q.    More than one year?

22             A.    Yes.

23             Q.    Okay.  Less than the entire period

24   that you were at Vendavo?

25             A.    As I said, I don't know when Vicki

1    M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2         was employed by Vendavo.  I know when I was

3         employed at Vendavo.  And during the time when

4         I was employed at Vendavo, our time overlapped

5         and we established personal relationship.

6              Q.    Did you work with Vicki Roberts at

7         Vendavo?

8              A.    Can you explain what do you mean

9         "work with"?  Work as a team?  Work in the same

10        company?  Work in the same region?

11             Q.    Well, I know you worked at the same

12        company.  Start with the same region.

13                   Did you work in the same region?

14             A.    No.

15             Q.    Where were you?

16             A.    In Europe.

17             Q.    Where was she?

18             A.    In U.S.

19             Q.    Did she ever come to Europe?

20             A.    I don't know.  I believe so.

21             Q.    Did you ever see her in Europe?

22             A.    I don't know.

23             Q.    No memory of seeing her in Europe?

24             A.    In Europe, no.

25             Q.    Did you ever come to the US?

1   M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2          A.     Yes.

3          Q.     Did you see her --

4          A.     Multiple times.

5          Q.     Sorry.  I apologize.

6                 You said multiple times?

7          A.     Yeah.

8          Q.     Did you ever see Vicki Roberts when

9   you came to the U.S.?

10         A.     Yes.

11         Q.     Did you ever participate on a team

12  with Vicki Roberts?

13         A.     Can you explain what do you mean

14  with "participate on a team"?

15         Q.     Well, that's -- I'm using your

16  language.  You said we may have worked on a

17  team together.  So did you ever work and team

18  together?

19                MR. BERKOWITZ:  Just object to form.

20         That's a different question.

21         You can answer if you can.

22                THE WITNESS:  No, we did not work in

23         the same team.

24  BY MR. OLIVER:

25         Q.     You never worked on a team with

1    M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2         Vicki Roberts?

3              A.    But, again, you have to say what you

4    mean with team.  Is a team a permanent --

5    permanent team where she was in a team, sales

6    team, I was in the European team or team for

7    particular purpose or reason?

8         Q.    I'm -- I'm using your language.

9              So what did you mean when you said

10   "a team"?

11             MR. BERKOWITZ:  Object to the

12        characterization.

13             THE WITNESS:  We were not in the

14        same team when employed at Vendavo.

15             It can well be that we worked as a

16        team on some task, but we were on the same

17        team.

18   BY MR. OLIVER:

19        Q.    Did you ever work with Vicki Roberts

20   while at Vendavo on pitching a client?

21             MR. BERKOWITZ:  I'll just make an

22        objection here.

23             I'll give you some leeway, Scott,

24        but I think this is beyond what's permitted

25        in the current scope of discovery given the

```
 1   M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
 2           stay that's been ordered.
 3       BY MR. OLIVER:
 4           Q.    You can answer.
 5           A.    I don't remember.  I -- I don't
 6   believe so.
 7           Q.    How did you know Kim Long?
 8           A.    The time when I was working at
 9   Vendavo overlapped with the time when Kim was
10   working at Vendavo.
11           Q.    Did you see Kim Long in Europe?
12           A.    No, I don't believe so.
13           Q.    Did you see Kim Long when you came
14   to the United States?
15           A.    Yes.
16           Q.    Did you ever work on a team with
17   Kim Long?
18           A.    We were working on different teams.
19   So I don't believe that we worked on the same
20   team at any time during the time at Vendavo.
21           Q.    Did you ever -- let me back up.
22               Do you understand what I mean when I
23   say "pitch a client"?
24           A.    Yes.
25           Q.    Did you ever pitch a client with
```

Page 154

1    M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2        not like that to happen.

3            Q.    Product strategy, is that

4        confidential information, too?

5            A.    Yes.

6            Q.    Lists of prospective customers, is

7        that confidential information, too?

8                MR. BERKOWITZ:  Object to form.

9                THE WITNESS:  Prospective customers?

10   BY MR. OLIVER:

11           Q.    Uh-huh.

12           A.    Yes.

13           Q.    That's confidential?

14           A.    That is confidential.

15           Q.    Are you currently attempting to hire

16       anyone else from Vendavo?

17           A.    We never intended to hire anybody

18       from Vendavo.  People approached us and

19       attempted to be hired at Price f(x).

20           Q.    Are you currently discussing hiring

21       anyone from Vendavo?

22           A.    I am not aware of.

23           Q.    And if you hire anyone from any

24       company, whether a competitor or not, aside

25        from the offer letter, which we've marked as

Page 314

1    M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2         I'm not her direct manager.  I'm not assigning

3         the job or tasks to Kim.  And that would be a

4         best question to be asked to the person who Kim

5         is reporting to.

6              Q.    Who does Kim report to?

7              A.    Kim reports to Patrick Adams.

8              Q.    You worked at Vendavo?

9              A.    I did.

10             Q.    Did you take anything with you when

11        you left?

12                   MR. BERKOWITZ:  Objection.

13        BY MR. OLIVER:

14             Q.    E-mail?  Paper?

15                   MR. BERKOWITZ:  I'll object to form

16        and again note that this is way out of

17        bounds of the Illinois case and what's been

18        allowed.

19                   But I'll -- I'll allow him to

20        answer.

21                   THE WITNESS:  Yes.

22        BY MR. OLIVER:

23             Q.    What did you take with you?

24             A.    Files and data from the time when I

25        was working at Vendavo.

1  M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2        Q.    What do you mean by "files and

3  data"?

4        A.    Just files.  Electronic files.

5        Q.    About what?

6        A.    For my time when I was working for

7  Vendavo.  So the files which I was working with

8  or had access to.

9        Q.    Did that include customer

10  presentations?

11        A.    Yes.

12        Q.    Did it include prospective customer

13  lists?

14        A.    Possible.

15        Q.    Did it include financial

16  information?

17        A.    That's possible.

18        Q.    Possible meaning --

19        A.    Possible meaning that I haven't

20  accessed or used this information after leaving

21  Vendavo, which is nine years ago, almost nine

22  years ago and never intended to -- to access or

23  use this information.

24        Q.    Then why did you take it?

25        A.    I was working for Vendavo and was

Page 316

1    M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2    allowed to use my personal device, my personal

3    computer.  Nobody did any care after me leaving

4    Vendavo to make sure that those files had been

5    removed.  And I continued using the same device

6    after leaving Vendavo and those files just

7    remained on this computer.

8         Q.     Do you still have that computer?

9         A.     No.

10        Q.     When did you stop using that

11   computer?

12        A.     The computer which I was using when

13   I left Vendavo?

14        Q.     Correct.

15        A.     I switched -- I don't know exactly

16   but I switch my devices regularly, typically,

17   in one-and-a-half to two-years intervals.

18        Q.     Do you copy the hard drive of the

19   old computer onto the new computer?

20        A.     I was copying the hard drive from

21   one computer to the other computer in the early

22   days, yes.

23        Q.     When is was the last time you copied

24   the hard drive from an older computer to a

25   newer?

1    M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2             A.    That must be -- and, again, I'm not

3    sure -- 2015.

4             Q.    And what has happened to that 2015

5    computer?

6             A.    I migrated the computer in -- around

7    2015 from a Samsung laptop to a smaller device.

8    I think -- I believe you call it MS --

9             What is this foldable tablet kind

10   of --

11             MR. BERKOWITZ:  Surface.

12             THE WITNESS:  Surface, exactly.

13             -- Surface in 2015.  And then I

14        migrated from the Surface to my current

15        laptop, which I'm using exclusively for --

16        in 2017.

17   BY MR. OLIVER:

18             Q.    Do you still have the Samsung

19   laptop?

20             A.    I do.

21             Q.    Where is it?

22             A.    In my home.

23             Q.    Where?

24             A.    In my home.

25             Q.    Where?

```
 1   M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

 2           A.    In Switzerland.

 3           Q.    Where in Switzerland?

 4           A.    Where I live in --

 5           Q.    Where do you live in Switzerland?

 6           A.    So full address?

 7           Q.    You can give me just the city.

 8           A.    It's not a city.  It's a village.

 9           Q.    Town?

10           A.    It's not a town.  It's a village.

11    It's called ███████████████     ██████████████

12    ██████████████████████████

13           Q.    Did you have Vendavo files about

14    product or roadmaps on that computer?

15           A.    That is possible.

16           Q.    Did you have files about brand

17    strategy on that computer?

18           A.    That I don't know.

19           Q.    How do you characterize Vendavo when

20    you are presenting to prospective clients?

21                 MR. BERKOWITZ:  Object to form.

22                 THE WITNESS:  We typically don't

23    talk about competition in the meetings with

24    prospective customers unless we are forced

25    to.
```

1  M. CICHON - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2              C E R T I F I C A T E

3    STATE OF ILLINOIS  )

4                       ) SS.:

5    COUNTY OF COOK     )

6

7            I, JANICE M. KOCEK, a Notary Public

8       within and for the State of Illinois, do

9       hereby certify:

10           That MARCIN CICHON, the witness

11      whose deposition is hereinbefore set forth,

12      was duly sworn by me and that such

13      deposition is a true record of the

14      testimony given by such witness.

15           I further certify that I am not

16      related to any of the parties to this

17      action by blood or marriage; and that I am

18      in no way interested in the outcome of this

19      matter.

20           IN WITNESS WHEREOF, I have hereunto

21      set my hand this 14th day of May, 2019.

22

23

24      _____

25          JANICE M. KOCEK, CSR, CLR.

# EXHIBIT B

1                              DANIEL COSTANZO

2                  IN THE UNITED STATES DISTRICT COURT

                  FOR THE NORTHERN DISTRICT OF ILLINOIS

3                          EASTERN DIVISION

4        VENDAVO, INC.,                        )

                                               )

5                  Plaintiff,                  )

                                               )

6           vs.                                )   No. 1:19-cv-01725

                                               )

7        KIM LONG, PRICE F(X) AG, and          )

         PRICE F(X), INC.,                     )

8                                              )

                   Defendants.                 )

9

10

11              The deposition of DAN COSTANZO, called by

12       the Plaintiff for examination, taken pursuant to

13       the Federal Rules of Civil Procedure of the United

14       States District Courts pertaining to the taking of

15       depositions, taken before Mary Ann Casale, CSR,

16       RPR, CLVS, CMRS, a Notary Public within and for

17       the County of Cook and State of Illinois and a

18       Certified Shorthand Reporter of said State, taken

19       at 500 West Madison Street, Suite 3700, Chicago,

20       Illinois, on May 8, 2019, at 10:37 a.m.

21

22

23

24       Job Number: 160250

25

1                      DANIEL COSTANZO

2    BY MS. SKULMAN:

3         Q.    Like the specific date?  I mean, that's

4    got -- I'm assuming around the same time if you

5    didn't know her beforehand?

6         A.    Yeah.  I mean, honestly, I was so busy,

7    I didn't really pay a whole lot of attention.  I

8    would just show up for the interview, right, Okay,

9    who am I interviewing for, who are we interviewing

10   with.  That's generally how that worked.

11        Q.    So when you did interview her, this

12   was -- Price f(x) did end up extending Ms. Long an

13   offer that first round, right after --

14        A.    I am not aware.  I was not in a position

15   of hiring, so -- or extending the offer for that

16   matter.

17        Q.    Okay.  So you don't know if she was

18   given an offer that first round and declined?

19        A.    I can't recall.  I wasn't involved with

20   the specifics.

21        Q.    So the Ninja team, I have seen some

22   documents talking about that, when you were all

23   were trying to build that up.

24              Do you -- would you or Vicki have been a

25   head of that or over that or sort of in charge of

1                    DANIEL COSTANZO
2      the Ninja team?
3          A.     No.
4               MR. COLSHER:  Objection to form.
5      BY MS. SKULMAN:
6          Q.     Who did the -- does the Ninja team
7      presales?
8          A.     Presales, yeah...
9          Q.     Who's the head of them, over them?
10         A.     So who heads up presales.  Well, that's
11     been -- It's not -- It's been a bit of a moving
12     target, so there's been a lot of movement in the
13     organization.
14              You get -- probably Gabe Smith would
15     have ultimately been responsible.
16         Q.     Who do you report to?
17         A.     I report to Patrick Adams.
18         Q.     And what's Patrick's position?
19         A.     Patrick is the chief revenue officer, so
20     he heads up the commercial team in the U.S.
21         Q.     Because you just said in the U.S., we
22     have been primarily talking about like, prospects,
23     employees in the U.S., right?
24         A.     (Nodding.)
25         Q.     Some of these projects or proposals or

Page 40

```
 1                    DANIEL COSTANZO
 2       A.    It's Patrick Adams.
 3            MS. SKULMAN:  Okay.  I'm going to have
 4       the court reporter hand you Plaintiff's
 5       Exhibit 2.  It is PFXIL0009686.
 6                 (Plaintiff's Exhibit 2 marked for
 7                  identification.)
 8  BY MS. SKULMAN:
 9       Q.    And same question, do you recognize this
10  document?
11                 (Witness peruses document.)
12            THE WITNESS:  Yes, I do recognize this
13       document.
14  BY MS. SKULMAN:
15       Q.    And so this is an email from you to
16  Vicki Roberts from February 27th, 2019?
17       A.    Mm-hmm.
18       Q.    A chain.
19            And what is this email discussing?
20       A.    This email is discussing hiring of
21  salespeople, so we had a number of different job
22  reqs open at the time.  And -- and this relates to
23  candidates who could potentially fill those roles.
24       Q.    Would this be sales or presales?
25       A.    This is sales.
```

Page 41

1                    DANIEL COSTANZO

2        Q.      And can you just -- I want to run

3   through -- there is a list of people here.

4        A.      Sure.

5        Q.      Who they are.  So start with ███████

6   ████████████████████████

7        A.      Okay.

8        Q.      Do you know who that is?

9        A.      I do not.

10       Q.      So he wasn't hired, I'm assuming?

11       A.      He was not or spoken to.

12       Q.      Oh.  It says not interested, so...

13       A.      Okay.  I'm sorry.  I did not speak to

14   this person.

15       Q.      Yeah.  I get that now.  And then No. 2

16   is ███████████

17               Do you know who that is?

18       A.      I don't.

19       Q.      Do you know who the reference to ██████

20   is?

21       A.      I don't.

22       Q.      ████████████

23       A.      No.

24       Q.      ████████████

25       A.      No.  I mean, I don't know any of these

Page 42

DANIEL COSTANZO

2    people, nor have I met them or spoken with them.

3        Q.    Since, let's say, December, do you know,

4    have other people -- have you interviewed other

5    people at Price f(x) for any sales or presales

6    roles?

7        A.    Yes.

8        Q.    Can you tell me who those are?

9        MR. COLSHER:  I'm going to object.

10        Again, we're getting a little bit far from

11        this -- from the issues of the TRO, a little

12        leeway, but we're not going to go too far

13        down these paths.

14        THE WITNESS:  Yes.

15        So who did we interview?  ▬

16    ▬▬▬▬▬.

17    BY MS. SKULMAN:

18        Q.    Anyone else you recall?

19        A.    I mean, those are the two primary ones

20    because they were hired.

21        Q.    They were hired?

22        A.    Yes.

23        Q.    Were -- Did either of these come from

24    Vendavo?

25        A.    ▬▬▬▬  at one point worked for

1                  DANIEL COSTANZO

2          I further certify that the taking of

3  this deposition was pursuant to Notice and that

4  there were present at the taking of said

5  deposition the appearances as hereinbefore noted.

6  I further certify that I am not a relative or

7  employee or attorney or counsel, nor a relative or

8  employee of such attorney or counsel for any of

9  the parties hereto, nor interested directly or

10  indirectly in the outcome of this action.

11         IN TESTIMONY WHEREOF, I have hereunto

12  set my hand and affixed my notarial seal this 20th

13  day of May, 2019.

14

15

16  _____

17  MARY ANN CASALE, CSR, RPR, CLVS, CMRS

18  Illinois C.S.R. License No. 084-002668

19

20

21

22

23

24

25

# EXHIBIT C

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1                    VICKI ROBERTS

2           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
3                    EASTERN DIVISION

4    VENDAVO, INC.,                  )
                                     )
5             Plaintiff,             )
                                     )
6       vs.                          )   No. 1:19-cv-01725
                                     )
7    KIM LONG, PRICE F(X) AG, AND    )
     PRICE F(X), INC.,               )
8                                    )
              Defendants.

9

10

11           The deposition of VICKI ROBERTS, called

12    by the Plaintiff for examination, taken pursuant

13    to the Federal Rules of Civil Procedure of the

14    United States District Courts pertaining to the

15    taking of depositions, taken before Mary Ann

16    Casale, CSR, RPR, CLVS, CMRS, a Notary Public

17    within and for the County of Cook and State of

18    Illinois and a Certified Shorthand Reporter of

19    said State, taken at 500 West Madison Street,

20    Suite 3700, Chicago, Illinois, on May 20, 2019, at

21    9:37 a.m.

22

23    HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

24

25    Job No: 160468

1                    VICKI ROBERTS

2    anyone at Price (f)x have concerns about Kim Long

3    targeting customers she had worked with at Vendavo?

4              MS. KIECKHEFER:  Objection to form.

5              THE WITNESS:  No.

6    BY MR. OLIVER:

7        Q.    To the best of your knowledge, were any

8    steps taken to prevent Kim Long from targeting

9    customers that she was aware of from her work at

10   Vendavo?

11             MS. KIECKHEFER:  Objection to form.

12             THE WITNESS:  No.

13   BY MR. OLIVER:

14       Q.    Aside from shadowing, are you aware of

15   Kim Long participating in any client facing

16   meetings?

17       A.    No.

18       Q.    Is Price (f)x currently, to the best of

19   your knowledge, in the process of hiring anyone

20   from Vendavo?

21       A.    No.

22       Q.    Have you solicited anyone from Vendavo

23   to join anyone at Price (f)x?

24             MS. KIECKHEFER:  Objection to form.

25             THE WITNESS:  No.

1                    VICKI ROBERTS

2          Did you have a general bring all the

3    sales folks together sort of meeting?

4          MS. KIECKHEFER:  Objection to form.

5          THE WITNESS:  Yes.

6    BY MR. OLIVER:

7        Q.   What do you call that meeting?

8        A.   Sales meeting.

9        Q.   Does Price (f)x hold an annual sales

10   meeting?

11       A.   Well, I only have been there for a year,

12   so I can only speak to -- we held one last year.

13       Q.   When in -- when last year?

14       A.   In January.

15       Q.   Did Kim Long attend that meeting?

16       A.   No.

17       Q.   Are you aware of any discussion within

18   Price (f)x about hiring Vendavo employees?

19          MS. KIECKHEFER:  Objection to form.

20          THE WITNESS:  No.

21   BY MR. OLIVER:

22       Q.   Have you had interaction -- any

23   interactions with Bain while you have been at Price

24   (f)x?

25       A.   Yes.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 199

1          VICKI ROBERTS

2          I further certify that the taking of

3  this deposition was pursuant to Notice and that

4  there were present at the taking of said

5  deposition the appearances as hereinbefore noted.

6  I further certify that I am not a relative or

7  employee or attorney or counsel, nor a relative or

8  employee of such attorney or counsel for any of

9  the parties hereto, nor interested directly or

10 indirectly in the outcome of this action.

11         IN TESTIMONY WHEREOF, I have hereunto

12 set my hand and affixed my notarial seal this 22nd

13 day of May, 2019.

14

15

16

17 _____

   MARY ANN CASALE, CSR, RPR, CLVS, CMRS
18 Illinois C.S.R. License No. 084-002668

19

20

21

22

23

24

25

# EXHIBIT D

1    Highly Confidential, Attorneys' Eyes Only - G. Smith

2              UNITED STATES DISTRICT COURT

                NORTHERN OF ILLINOIS

3                EASTERN DIVISION

4    VENDAVO, INC.,                )

                                   )

5              Plaintiff,          )

                                   )

6            vs.                   ) No. 1:19-cv-01725

                                   )

7    KIM LONG, PRICE F(X) AG, and )

     PRICE F(X), INC.,             )

8                                  )

              Defendants.     )

9    ----------------------------)

10

11        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

          PURSUANT TO PROTECTIVE ORDER

12

13

14

15

16       VIDEOTAPED DEPOSITION OF GABRIEL SMITH

17              Chicago, Illinois

18           Wednesday, May 22nd, 2019

19

20

21

22

23    Reported by:

24    Amy M. Spee, CSR, RPR, CRR

25    Job No. 160469

Highly Confidential, Attorneys' Eyes Only - G. Smith

1     were -- we were both involved in as well.

3         Q.     Any others?

4         A.     Not that I recall.

5         Q.     Did you work with Vicki Roberts

6     while you were at Vendavo on any accounts?

7         A.     Yes.

8         Q.     What accounts do you recall working

9     on with Vicki?

10        A.     The only one I remember clearly was

11     ███████████ .

12        Q.     Do you -- what accounts were you

13     working on at Vendavo when you left?

14        A.     I was primarily -- I was on a

15     consulting engagement, actually, so I had been

16     asked to actually be a consultant on the -- on

17     the ███████████ .

18        Q.     So you were basically working

19     exclusively for the ███████████ ?

20        A.     Yes.

21        Q.     About how long did that engagement

22     last?

23        A.     I'd say four months or so. Four or

24     five months, maybe.

25        Q.     As director of sales, did you close

Page 131

Highly Confidential, Attorneys' Eyes Only - G. Smith

1    thought she had good pricing knowledge. I

2    thought she was a likable person. That was my

3    impression.

4

5        Q.    Anything else?

6        A.    No.

7        Q.    What was your impression of Vicki

8    Roberts?

9        A.    I thought Vicki Roberts was also

10   highly effective, very good at developing

11   personal relationships.

12             Also good at closing software deals

13   and knowledgeable also about the pricing space,

14   and very dependable and honest.

15       Q.    When Kim Long interviewed at

16   Price f(x), did you ever interview her?

17       A.    Not officially, no.

18       Q.    Unofficially?

19       A.    No.

20       Q.    Did you ever speak with her on the

21   phone about Price f(x) before she joined?

22       A.    Yes.

23       Q.    How many times?

24       A.    I think twice.

25       Q.    Was this before -- was this in the

Highly Confidential, Attorneys' Eyes Only - G. Smith

2     Q.    Is Price f(x) currently in the

3 process of hiring anyone else from Vendavo?

4     A.    I'm not aware of any.

5     Q.    Does Price f(x) get a referral bonus

6 for new employees that they hire?

7     A.    Yes, I believe so.

8     Q.    Did anyone get one from the hiring

9 of Kim Long?

10     A.    I don't know.

11     Q.    Have you ever gotten a referral

12 bonus from Price f(x)?

13     A.    No.

14     Q.    When you left Vendavo, did you

15 return your Vendavo laptop?

16     A.    When I left Vendavo, I did not have

17 a Vendavo laptop.

18     Q.    What were you using?

19     A.    I was using a MacBook Air that I

20 owned.

21     Q.    Did you return -- that you owned?

22     A.    Yes.

23     Q.    Do you still have that MacBook Air?

24     A.    That MacBook Air is in the

25 possession of Shearman & Sterling.

1   Highly Confidential, Attorneys' Eyes Only - G. Smith

2                   C E R T I F I C A T E

3

4     STATE OF ILLINOIS  )

5     COUNTY OF COOK       )

6

7             I, AMY M. SPEE, a Certified Realtime

8          Reporter within and for the State of

9          Illinois, do hereby certify:

10            That GABRIEL SMITH, the witness whose

11         deposition is hereinbefore set forth, was

12         duly sworn by me and that such deposition

13         is a true record of the testimony given by

14         such witness.

15            I further certify that I am not

16         related to any of the parties to this

17         action by blood or marriage; and that I am

18         in no way interested in the outcome of this

19         matter.

20            IN WITNESS WHEREOF, I have hereunto

21         set my hand this 23rd day of May, 2019.

22

23         _____

24            AMY M. SPEE, CSR, RPR, CRR

25